William J. KNOTT, Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Appellee.

Marvin L. WAMSGANZ et al., Appellants,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Appellee.

Nos. 75–1285 and 75–1317.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 8, 1975.

Decided Dec. 30, 1975.

Rehearing Denied Feb. 12, 1976.

Robert M. Sears, Green, Hennings & Henry, St. Louis, Mo., for appellants.

R. W. Yost, Missouri Pacific Railroad Co., St. Louis, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

These cases present the question whether a private employer's grooming code imposing limits on the hair length of male employees while at the same time not imposing similar limits on the hair length of female employees constitutes sex discrimination in violation of Section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. The district court held that Title VII does not prohibit an employer from discharging male employees who refuse to keep their hair trimmed within the limits prescribed by the company's grooming code. *See Knott v. Missouri Pacific R. R.*, 389 F.Supp. 856 (1975); *Wamsganz v. Missouri Pacific R. R.*, 391 F.Supp. 306 (1975). We affirm.

Defendant has promulgated a set of separate written grooming standards for men and women. The challenged regu-

lation applicable to male employees provides in part as follows:

> Side burns will be neat and well trimmed. Pork chop style or curved side burns extending toward the corner of the mouth will not be permitted. The hair length will not extend down over the ears or beyond the top of the shirt collar.

No similar regulation restricts the hair length or hair style of female employees, but both male and female employees must conform to certain standards of dress.

William J. Knott, appellant in No. 75–1285, was employed as a switchman for defendant from May 28, 1970 until November 28, 1972, when he was suspended indefinitely for failure to comply with the company's hair length regulations. He had previously been suspended without pay for a four-day period in January 1971.[1] On November 28, 1972, Knott filed a written charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that defendant had discriminated against him on the basis of sex. He was formally discharged on December 6, 1972. Within ninety days after receiving notice of his right to file suit, he filed a complaint in the district court seeking declaratory and injunctive relief, back pay, and attorney's fees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. §§ 1981–83, 1985, and 1988. Defendant responded by filing a motion to dismiss for failure to state a claim. On April 17, 1972, the district court rendered its decision granting defendant's motion.

Marvin L. Wamsganz, appellant in No. 75–1317, was terminated from his position as "Associate Procedures Analyst" on January 15, 1973, after having been suspended without pay for a period of three months. He was discharged solely because he failed to keep hair and mustache trimmed within the limits prescribed by defendant's grooming regula-

tion reproduced above. On October 13, 1972, Wamsganz filed a charge of discrimination with the EEOC. On November 25, 1973, within ninety days after receiving notice of his right to sue, Wamsganz filed a class action suit in district court. The allegations and the relief sought were substantially the same as in No. 75–1285, except that Wamsganz also sought reinstatement. The matter first came before the court upon plaintiff's motion for a preliminary injunction. The court denied the motion on January 29, 1974 for failure to show substantial probability of success at trial. The matter again came before the court upon cross-motions for summary judgment. On February 26, 1975, the district court filed a memorandum and order granting defendant's motion for summary judgment and on March 19 denied plaintiff's motion to alter or set aside the judgment and for a new trial.

The district court concluded in both cases that grooming codes imposing different hair length requirements on male and female employees do not constitute unlawful sex discrimination within the meaning of § 2000e–2. In No. 75–1285, the court additionally held that plaintiff stated no claim under 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1988.

Separate appeals were timely filed, but were informally consolidated by counsel for briefing, oral argument, and opinion. Appellants have apparently abandoned any claims based on alleged violations of the Civil War era civil rights acts. The sole issue for decision, then, is whether defendant's hair length policy for males constitutes sex discrimination within the meaning of § 2000e–2.

The theory upon which appellants rely is the "sex-plus" rationale of *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613 (1971) (per curiam) and *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir. 1971). "Sex-plus" discrimination occurs when employees are classified on the basis of sex plus one other seemingly neutral characteris-

---

1. Knott returned to work with acceptably short hair on August 15, 1973.

tic. Interpreting § 2000e–2 to proscribe this type of discrimination, as in *Phillips* and *Sprogis*, means that similarly situated individuals of one sex cannot be discriminated against vis-a-vis members of their own sex unless the same distinction is made among those of the opposite sex.

■ Section 2000e–2 provides that

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

\* \* \* \* \* \*

(e) Notwithstanding any other provision of this subchapter, (1) it shall not be unlawful employment practice for an employer to hire and employ employees, \* \* \* on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, \* \* \*

Application of this section requires a two-step analysis. First, we consider whether a discrimination on the basis of sex has occurred. If there is no discrimination, the inquiry ends. But if the court concludes that an employer has discriminated on the basis of sex, the burden of proof then shifts to the employer to show that a bona fide occupational qualification (BFOQ) reasonably necessary to the operation of the business justifies the discriminatory practice. *See, e. g., Weeks v. Southern Bell Tel. & Tel. Co.*, 408 F.2d 228, 232 (5th Cir. 1969). Whether the policy complained of is a bona fide occupational qualification was not decided by the court below and is not presented in these appeals.

The legislative history is not substantial. *See Dodge v. Giant Food, Inc.*, 160 U.S.App.D.C. 9, 488 F.2d 1333 n. 17 (1973). The inclusion of sex as a part of the Act was accomplished by a floor amendment in the House just one day prior to passage of Title VII without prior hearings or debate. Debate focused primarily on the need to put white and black women on an equal footing in the labor market and on the fear expressed by some that the amendment was an attempt to delay passage of the Act. *See* 110 Cong.Rec. 2577–84 (1964). The legislative history accompanying passage of the 1972 amendments makes clear, however, that the primary thrust of the provision was to discard outmoded sex stereotypes posing distinct employment disadvantages for one sex.[2] The courts of appeals that have thus far considered the claim asserted here have concluded that the Act was never intended to interfere in the promulgation and en-

---

2. House Report No. 92–238 states:

Women are subject to economic deprivation as a class. Their self-fulfillment and development is frustrated because of their sex. Numerous studies having shown that women are placed in the less challenging, the less responsible and the less remunerative positions on the basis of their sex alone.

\* \* \* \* \* \*

This Committee believes that women's rights are not judicial divertissements. Discrimination against women is no less serious than other forms of prohibited employment practices and is to be accorded the same degree of social concern given to any type of unlawful discrimination.

\* \* \* \* \* \*

The time has come to bring an end to job discrimination once and for all, and to insure every citizen the opportunity for the decent self-respect that accompanies a job commensurate with one's abilities.

U.S.Code Cong. & Admin.News 2140–41 (1972).

forcement of personal appearance regulations by private employers. *See Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084 (5th Cir. 1975) (en banc), *vacating* 482 F.2d 535 (1973); *Baker v. California Land Title Co.*, 507 F.2d 895 (9th Cir. 1974), *cert. denied*, 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975); *Dodge v. Giant Food, Inc., supra; Fagan v. National Cash Register Co.*, 157 U.S.App.D.C. 15, 481 F.2d 1115 (1973). These decisions represent the more realistic and reasonable interpretation of § 2000e–2. As stated in the *Willingham* en banc decision,

> Without more extensive consideration [of the amendment adding sex to the Act], Congress in all probability did not intend for its proscription of sexual discrimination to have [such] significant and sweeping implications. We should not therefore extend the coverage of the Act to situations of questionable application without some stronger Congressional mandate.

507 F.2d at 1090.

■ Defendant's hair length requirement for male employees is part of a comprehensive personal grooming code applicable to all employees. While no hair length restriction is applicable to females, all employees must conform to certain standards of dress. Where, as here, such policies are reasonable and are imposed in an evenhanded manner on all employees, slight differences in the appearance requirements for males and females have only a negligible effect on employment opportunities. There is no claim that defendant has established its policy as a pretext to exclude males from employment.

In summary, we conclude that minor differences in personal appearance regulations that reflect customary modes of grooming do not constitute sex discrimination within the meaning of § 2000e–2. The judgments of the district court are therefore affirmed.