Steven F. HEARTH, a/k/a Steven F. Apitz, Gerald Chamish and Michael Grahek, Plaintiffs,

v.

The METROPOLITAN TRANSIT COMMISSION (M. T. C.), Harry Springer, Individually and as Director of the M. T. C. Transit Operation Division, and John Gorman, Individually and as M. T. C. Nicollet Garage Foreman, Defendants.

No. 4–75–Civ. 79.

United States District Court,
D. Minnesota,
Fourth Division.

July 20, 1977.

Thomas F. Miller, Carroll & Firth, Minneapolis, Minn., for plaintiffs.

James R. Steilen, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

LARSON, Senior District Judge.

This purports to be a Title VII sex discrimination suit concerning the enforcement of the grooming code[1] of defendant Metropolitan Transit Commission ("MTC"). Plaintiffs were employed as bus drivers by the MTC at various times between 1971 and 1976. They were each suspended during the summer of 1973. All three were eventually reinstated but they have since left the employ of the MTC.

Plaintiffs allege that their suspensions were the result of arbitrary and discriminatory enforcement by the MTC of its operator's dress and grooming code. They also allege that they were suspended in retaliation for their protests against any enforcement by the MTC of its dress and grooming policies. Defendants move for summary judgment.

For the reasons set forth below, the motion will be granted in part and denied in part.

---

1. The "Operators Uniform Requirements and Appearance Code" states in pertinent part: "Hair, sideburns, mustaches, and beards will be neat, clean, trimmed and present a groomed appearance and the length and/or bulk shall not be excessive or present a ragged, unkempt, or extreme appearance." Despite references to dress, this lawsuit essentially revolves around hair length requirements.

■ Plaintiffs concede that dress and grooming rules which mandate different standards for each sex may be enforced by an employer under Title VII. *Knott v. Missouri Pacific Railway*, 527 F.2d 1249 (8th Cir. 1975); *Longo v. Carlisle De Coppet and Co.*, 537 F.2d 685 (2d Cir. 1976) (per curiam); *Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d 1349 (4th Cir. 1976); *Brown v. D. C. Transit System, Inc.*, 173 U.S.App.D.C. 130, 523 F.2d 725 (1975), *cert. denied* 423 U.S. 862, 96 S.Ct. 121, 46 L.Ed.2d 91 (1975); *Baker v. Calif. Land Title Co.*, 507 F.2d 895 (9th Cir. 1974), *cert. denied* 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975); *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084 (5th Cir. 1973) (en banc). But plaintiffs allege that the enforcement of the grooming code was arbitrary and discriminatory.

■ The amended complaint goes no further than to allege arbitrary and discriminatory enforcement. The original complaint, however, specifies the arbitrariness and discrimination complained of. First, plaintiffs suggest that the grooming code was enforced only against a minority of the male employees. No citation of authority is needed to demonstrate that this cannot amount to sex discrimination. Second, plaintiffs suggest that female drivers hired after the promulgation of the grooming code "were not required to meet the same standards of hair 'length and/or bulk' required of male drivers." This theory must fail in light of *Knott*, where the discrepancy in hair length restrictions was held not to constitute discrimination on the basis of sex. 527 F.2d at 1252.

Accordingly, this Court is constrained to hold that plaintiffs' first claim does not state a cause of action under 42 U.S.C. § 2000e–2.[2]

The second claim is that plaintiffs' suspensions were reprisals for their protests against any enforcement of MTC dress and grooming policies. This alleged retaliation is said to violate 42 U.S.C. § 2000e–3(a), which provides in pertinent part as follows:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

This section contains two different clauses known as the "opposition" and "participation" clauses. B. L. Schlei & P. Grossman, *Employment Discrimination Law* 416 (1976). Plaintiffs do not plead, nor could they according to the evidence adduced by defendants, that their suspensions were predated by, or connected with, any investigation, proceeding, or hearing by the EEOC or its State counterpart. Hence, plaintiffs cannot rely on the "participation" clause. Their claim, if any, must be that they "opposed [a] practice made an unlawful employment practice by this subchapter." The law regarding this clause is somewhat uncertain since most of the cases have dealt with the "participation" clause.

■ The issue presented is whether the retaliation charge depends upon a showing that the employment practice complained of was in fact a Title VII violation. It is clear that an employee is protected from retaliation under the "participation" clause whether or not the charge filed with the EEOC is meritorious. *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969); *Bradford v. Sloan Paper Co.*, 383 F.Supp. 1157 (N.D.Ala.1974); *Francis v. A. T. & T.*, 55 F.R.D. 202 (D.D.C.1973); *EEOC v. Kallir, Phillips, Ross, Inc.*, 401 F.Supp. 66 (S.D.N.Y. 1975). However, the case law looks the other way where the "opposition" clause is involved.

In *EEOC v. C & D Sportswear Corp.*, 398 F.Supp. 300 (M.D.Ga.1975), the court held that accusations of discrimination in employment made outside the context of

---

**2.** Plaintiffs do not allege that the grooming code is used as a device to prevent or hinder employment, or the enjoyment thereof of one sex group over the other. *See Bujel v. Borman Food Stores, Inc.*, 384 F.Supp. 141 (E.D.Mich. 1974).

EEOC proceedings are made at the accuser's peril. Acknowledging that the result is different under the "participation" clause, the court observed that while access to the EEOC must be protected, no such safeguards are required when the statutory procedures set up by Congress are not invoked. In order to prevail under the "opposition" clause, the court concluded, plaintiff must demonstrate that she opposed what was, in fact, an unlawful employment practice under Title VII.

The authority cited in support of this conclusion is questionable. In *Ammons v. Zia*, 448 F.2d 117 (9 Cir. 1971), the "plaintiff was discharged because of a series of incidents, not related to her sex, which were reasonable grounds for her discharge." 448 F.2d at 121. Thus plaintiff failed to prove her retaliation claim under any standard. The other case cited in *C & D Sportswear* is *Ripp v. Dobbs House*, 366 F.Supp. 205 (W.D. Ala.1973). There the retaliatory discharge claim was dismissed for failure to state a claim upon which relief could be granted. The court thought it important that plaintiff did not allege that any of the defendants interfered with his access to the EEOC, citing *Pettway, supra*. But the court did not address, perhaps because it was not presented by the plaintiff, the issue of the propriety of plaintiff's discharge under the "opposition" clause. It is clear that the court did not decide that no "opposition" claim could be presented where the underlying complaint of employment discrimination was invalid. This is evident from the court's recognition that "plaintiff has alleged unlawful employment practices, which would be subject to remedy in this Court." 366 F.Supp. at 215. In short, *Ripp v. Dobbs House* is weak authority for the proposition it is cited for in *C & D Sportswear*.

Moreover, the reasoning of *C & D Sportswear* may appropriately be confined to the facts of that case. The employee there made an unfounded charge of racism on the part of her employer. The court was concerned about the "racial discord, disruption, and disharmony" that would result if employees were "free to make unfounded accusations of racism." The case might therefore be distinguishable on the ground that the form of opposition was unprotected because of its arguably inflammatory nature regardless of the validity of the complaint. *See Schlei & Grossman, supra*, at 428. In any event, *C & D Sportswear* does not satisfactorily resolve the question at hand.

Neither does *Winsey v. Pace College*, 394 F.Supp. 1324 (S.D.N.Y.1975), where the practice opposed by plaintiff could not have been a Title VII violation because Title VII had not been amended at that time to cover her situation. Plaintiff made a "mistake of law" because even if sex discrimination existed, it was not an unlawful employment practice under Title VII. *See Schlei & Grossman, supra*, at 428–29.

■ This Court agrees with the numerous EEOC decisions holding that as long as the employee had a reasonable belief that what was being opposed constituted discrimination under Title VII, the claim of retaliation does not hinge upon a showing that the employer was in fact in violation of Title VII. *See Schlei & Grossman, supra*, at 429 and n. 34. This holding does not necessarily insulate the protesting employee from adverse consequences. In addition to showing a reasonable basis for the belief that the employer is discriminating, the employee must also demonstrate that there was "opposition" within the meaning of the statute, *see Tidwell v. American Oil Co.*, 332 F.Supp. 424 (D.Utah 1971), and that the form of the "opposition" is protected. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222 (1st Cir. 1976).

But this Court believes that appropriate informal opposition to perceived discrimination must not be chilled by the fear of retaliatory action in the event the alleged wrongdoing does not exist. It should not be necessary for an employee to resort immediately to the EEOC or similar State agencies in order to bring complaints of

discrimination to the attention of the employer with some measure of protection. The resolution of such charges without governmental prodding should be encouraged.

The statutory language does not compel a contrary result. The elimination of discrimination in employment is the purpose behind Title VII and the statute is entitled to a liberal interpretation. When an employee reasonably believes that discrimination exists, opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts.[3]

Applying this conclusion to the instant case, the claim of retaliatory suspensions is viable even though the Court has determined that plaintiffs were mistaken in charging sex discrimination.[4]

Nevertheless, defendants are correct in pointing out that plaintiffs have not adequately pleaded subject matter jurisdiction. This deficiency must be cured by a second amended complaint. Leave for that purpose will be granted. Plaintiffs should also plead their retaliation claim with more particularity in order to provide sufficient notice to defendants as to the nature of the opposition and the basis for the reasonable belief that discrimination existed.

IT IS ORDERED:

1. That defendants' motion for summary judgment be, and is hereby, granted as to the claims under 42 U.S.C. § 2000e–2 and otherwise denied.

2. That plaintiffs amend their complaint within 20 days.

---

**3.** In *C & D Sportswear*, the court analogized to the situation under the National Labor Relations Act where employees subject to a no-strike agreement may strike to protest an unfair labor practice only at their peril. If the NLRB later determines that no unfair labor practice existed, the employees may be *discharged*. *C & D Sportswear, supra*, at 306. In labor-management relations the courts and Congress attempt to regulate and equalize the weapons which may be used in economic warfare. In the Title VII context, however, the intention of Congress to eliminate discrimination in employment requires a broad construc-

tion of the statute to further this policy. Title VII is aimed at the employer to circumscribe the discretion exercised in employment decisions.

**4.** The result here is particularly appropriate because at the time the plaintiffs were protesting the grooming code and its enforcement, the law looked more favorably on their complaints. *See Willingham v. Macon Telegraph Publishing Co.*, 482 F.2d 535 (5th Cir. 1973), *vacated* 507 F.2d 1084 (5th Cir. 1973) (en banc), and authority cited therein.