**Frank MONTEIRO, Plaintiff, Appellant,**

**v.**

**POOLE SILVER COMPANY,**
**Defendant, Appellee.**

**No. 79–1346.**

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1979.

Decided Feb. 14, 1980.

Edward F. Haber, Boston, Mass., with whom Kenneth V. Kurnos, Boston, Mass., was on brief, for plaintiff, appellant.

William T. Sherry, Jr., Boston, Mass., with whom Nutter, McClennen & Fish, Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Frank Monteiro sued his former employer in the district court alleging that he had been discharged and otherwise discriminated against on account of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* After a non-jury trial, the district court concluded that there had been no policy of racial discrimination practiced or knowingly permitted by Monteiro's employer, Poole Silver Company ("Poole"); that Monteiro failed to establish that his discharge was motivated by racial prejudice; and that he likewise failed to show that he was terminated in retaliation for his opposition to unlawful employment practices, *see* section 704(a) of the Act, 42 U.S.C. § 2000e–3(a).[1] On appeal Monteiro challenges only the last of the foregoing rulings.

Poole hired Monteiro in late 1958 as a "buffer" at its Taunton, Massachusetts facility. Monteiro voluntarily terminated his

---

1. Section 704(a) provides, in pertinent part:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

employment there about five years later because he believed that his supervisor, Norman Courcy, returned more work for rebuffing to the few black buffers than to the white employees holding similar positions. Since buffers were paid on a piecework basis, an excessive amount of returned work would cause a reduction in the wages received. The district court, however, found that the "two workers who had in fact had the most work returned were both white."

In May 1969 Monteiro was rehired by Poole as a buffer at its newly opened plant in Fall River and given the unofficial title of "lead-man" of the buffing department. In 1972 Monteiro was demoted, in the district court's words "partly as the result of conflict with the then assistant plant manager [Colin] Menzies." Following this incident, Monteiro lodged a grievance through the Union alleging that he had been harassed and demoted because of racial prejudice, and also filed a similar complaint with the Massachusetts Commission Against Discrimination.[2] In settlement, Poole reinstated Monteiro to his "lead-man" position but announced in the settlement memorandum that

> "considerable emphasis [is being] placed on rules and regulations that must be maintained by Mr. Monteiro to insure his continued position and employment with the Poole Silver Company . . . . The following must be observed and followed . . . . .
>
> 1) must maintain his position at the lathe. . . .
>
> . . . . . .
>
> 4) must not roam around factory at will.
>
> . . . . .
>
> 7) must refrain from the continuing use of the word discrimination.[3]

8) must not drink alcoholic beverages or be intoxicated during working hours.

> "With the understanding of the above rules and regulations, and understanding full well that the slightest infraction of any of the above rules shall mean immediate dismissal, Mr. Monteiro . . . agreed to the reinstatement and accepted his position of 'lead man.' "

In mid-1973 Monteiro filed further grievances and a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC").

In May of 1974, apparently before disposition of the above-mentioned charges of discrimination, Norman Courcy, Monteiro's former supervisor at the Taunton plant, was named as supervisor of the Fall River facility. The incident leading to Monteiro's presently contested discharge occurred about nine months later, in February of 1975. According to the district court,

> "[T]he event probably occurred in the following manner:
>
> "The plaintiff was away from his bench. Courcy ordered him back to his bench. Plaintiff said, in substance, 'What about the other people walking around? You are harassing me.' Plaintiff then complained that Courcy was discriminating against him. The altercation continued in spurts of conversation. The plaintiff attempted to involve Souza, the shop steward. He also accused Courcy of doing buffing work in violation of union rules. Finally, plaintiff made a more vigorous accusation of discrimination against Courcy.
>
> "The plaintiff testified that at this point Courcy said, in substance, 'I will not be accused of discrimination. You're fired.' Courcy testified that he said, in substance, 'I'll not be accused of discrimination. I'm ordering you back to your bench. You're not doing what I've told

---

**2.** The district court found that "Menzies was in part motivated by racial prejudice" in his treatment of Monteiro, but noted that Monteiro "does not seek present redress on this account" and that Menzies had since left the company. The court further found no evidence that racial-

ly discriminatory policies had been practiced or permitted by Poole.

**3.** The district court observed that "While this condition [is] of very questionable enforceability, it may illuminate the relationship" which existed between Monteiro and his employer.

you to do, so you're fired.' In any case, the plaintiff refused to punch his timecard out, and Courcy did it himself.

"I find that Courcy's version of this conversation, or series of conversations, is probably more accurate."

Although this depiction suggests a sudden and very brief confrontation, the parties agreed during argument in this court and in their briefs that the exchanges between Courcy and Monteiro took place over a period of some thirty minutes. Courcy says he warned Monteiro repeatedly to return to his work station, and told him that a refusal to do so constituted cause for discharge.[4] Also according to Courcy, whose recollections the district court credited, it was not until after the above exchanges that Monteiro voiced his accusations of discrimination and ultimately was asked to punch out his time card.

After this incident Monteiro filed a second charge of discrimination with the EEOC alleging, among other things, that he was discharged in retaliation for his opposition to unlawful employer practices. The EEOC issued its "Determination" in which it addressed all of Monteiro's allegations of discrimination including those made in the earlier filed charge of 1973. While finding reasonable cause to believe that Monteiro had been temporarily demoted in 1972 by former supervisor Menzies because of his race, the Commission found that Monteiro's allegation of retaliatory discharge following the Courcy incident was "not substantiated by the evidence of record." Monteiro was subsequently issued a Notice of Right to Sue and commenced this action in the district court.

As noted, the district court rejected all of Monteiro's claims, finding, *inter alia*, both that no policy of racial discrimination had been practiced or knowingly permitted by Poole, and that the plaintiff had failed to sustain his burden of proving that his discharge was motivated by racial prejudice. Monteiro does not appeal from either of these conclusions. He appeals solely from the court's rejection of his further contention that his discharge was in retaliation for his protected opposition to unlawful employment practices. *See* note 1, *supra.* The district court said the following about that issue.

"There remains the question of retaliatory discharge. It is likely that the plaintiff's accusation of discrimination was one of the factors in bringing about his discharge.

"I rule, however, that the plaintiff's conduct in this case is not protected by 42 U.S.C. § 2000e–3(a). That section prohibits retaliation against an employer [sic] 'because he has opposed any [unlawful employment] practice.' This prohibition encompasses informal as well as formal opposition. *Hearth v. Metropolitan Transit Commission*, 436 F.Supp. 685, 688–689 (D.Minn.1977). In my opinion, this section applies to orderly opposition and not to an isolated flare-up. It applies to situations in which the employee has a conscientiously held belief that there was racial discrimination. That may have been the plaintiff's belief, but it is at least as likely that the plaintiff decided that the best defense to correction from the superintendent was a strong offense.

"I find this discharge to be essentially the result of a challenge by a volatile and voluble employee to the authority of a hard-nosed and short-fused supervisor. The result may have been unfortunate, but an action under Title VII does not provide a remedy."

Monteiro takes issue with the district court's statement that section 704(a) "applies to situations in which the employee has a conscientiously held belief that there

---

4. Poole points in its brief to the following provision of the collective bargaining agreement governing union-management relations:

"Article VIII
Discharge of Employees
"Section 1: The right to discharge employees shall remain a right of the Employer, except

that no discharge shall be made without just cause. Just cause shall include, but shall not be limited to, among others, the following

\* \* \* \* \* \*

c. Insubordination
d. Refusal to work."

was racial discrimination." Monteiro, citing *Hearth v. Metropolitan Transit Commission*, 436 F.Supp. 685, 688 (D.Minn.1977), argues that "informal opposition by an employee who *reasonably believes* that he has been the victim of unlawful discrimination" is protected. *See also Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir. 1978) (agreeing with *Hearth*). But this verbal distinction is of no assistance to Monteiro. The question in *Hearth* was whether, in order to prevail on a claim of retaliatory discharge, the plaintiff had to show that the employment practice complained of was *in fact* a Title VII violation. In holding that plaintiff need only reasonably believe that discrimination was being practiced before acting in "opposition," the *Hearth* court held that opposition conduct did not lose protection merely because the allegedly unlawful employment practice was later determined not to be violative of Title VII.

 The question here is not the same. The district court's rejection of Monteiro's claim of retaliatory discharge did not rest simply upon the fact that it found no actual discriminatory behavior on the part of his employer. Rather, the court went on to conclude, in substance, that Monteiro had not shown that his accusations of discrimination were voiced in good-faith "opposition" to perceived employer misconduct; the court instead saw those accusations as likely having been raised as a smokescreen in challenge to the supervisor's legitimate criticism. In these circumstances, it is immaterial whether Monteiro was required to demonstrate that he harbored a "reasonable belief" of discriminatory employer behavior or a "conscientiously held belief" of such

misconduct.[5] Under either standard—the employer's conduct being non-discriminatory in fact—the plaintiff must show that his so-called opposition was in response to some honestly held, if mistaken, feeling that discriminatory practices existed.[6] In the field of labor relations we have held that while the filing of a labor related civil action by employees is ordinarily a concerted activity protected by section 7 of the National Labor Relations Act, the employees forfeit that protection by filing such an action in bad faith. *Leviton Manufacturing Co., Inc. v. NLRB*, 486 F.2d 686 (1st Cir. 1973). *Cf. NLRB v. Interboro Contractors, Inc.*, 388 F.2d 495, 500 (2d Cir. 1967) (discussing whether employee's voicing of complaints of employer's alleged violation of collective bargaining contract is protected concerted activity and distinguishing complaints made for "legitimate union purposes" and those "fabricated for personal motives"). Section 704(a) is similarly unavailable to protect an employee who makes unfounded claims of discrimination in order to excuse non-compliance with legitimate employer demands. We interpret the court's language that "it is at least as likely that [Monteiro] decided that the best defense to correction from the supervisor was a strong offense" to mean that, under the traditional civil standard, Monteiro did not establish that in raising accusations of discrimination he was opposing conduct honestly perceived as unlawful. Where the motive of an employee in voicing allegations of employer misconduct is in issue, the trier's credibility determinations are entitled to great weight. *See Leviton, supra* at 690; Fed.R.Civ.P. 52(a). Here, where no transcript has been provided, such

5. The proposed "reasonable belief" standard is, if anything, less favorable to plaintiff than the subjective standard articulated. The articulated standard would give plaintiff the benefit of an *unreasonable* belief that discrimination was being practiced so long as the belief was conscientiously held. To decide this case, we need not choose between the two standards.

6. In his brief Monteiro contends that it is sufficient to make out a section 704(a) claim if "a reasonable man standing in the plaintiff's position—*i. e.*, given the plaintiff's observations and the circumstances surrounding the prac-

tices or actions he has opposed—would have believed that he had been the victim of unlawful discrimination." If Monteiro is arguing that it is enough that some reasonable person might have sensed discrimination even though this plaintiff actually did not, such an argument is without merit. Assuming, as is true in the present case, that the employer's actions to which the employee was responding were in fact nondiscriminatory, Title VII does not shield disruptive conduct taken in bad faith simply because some other worker might have been properly motivated in acting similarly.

findings are virtually beyond review. *See United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112 (1st Cir. 1975); Fed. R.App.P. 10(b).

■ Monteiro further argues that the district court's conclusion that he did not harbor a conscientiously held belief of the existence of racial discrimination during his confrontation with supervisor Courcy is "speculative and inconsistent with and not supported by the court's factual findings," and that the court "failed to take its own factual findings into account in reaching its legal conclusion . . . ." Monteiro contends, in essence, that the district court's references throughout its opinion to Monteiro's perceptions of discrimination and his actual subjection to discriminatory practices in the past compelled it to find that Monteiro's "belief that he was being discriminated against on the basis of his race when he confronted Courcy . . . was both reasonable and conscientiously held." Especially in the absence of a transcript, we cannot find merit in this argument. That on past occasions Monteiro was an actual or imagined victim of racial prejudice may have led him more easily to believe that he was being discriminated against, but did not compel the district court to find that he was responding to a belief of present discriminatory behavior when he confronted Courcy in this case.

■ In a related argument, Monteiro contends that the district court's finding that "It is likely that the plaintiff's accusation of discrimination was one of the factors in bringing about his discharge" required the court to make a finding of retaliatory discharge violative of section 704(a). The short answer to this contention has already been discussed, namely that Monteiro's accusation of discrimination, being unfounded in fact and insincerely raised, did not constitute "opposition" conduct entitled to the protection of section 704(a). Moreover, the

finding below that Monteiro's accusation of discrimination was "one of the factors in bringing about his discharge" falls short of a finding that the accusation was a determinative factor in the discharge decision. While in *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 234 n.8 (1st Cir. 1976), we noted that we had "no occasion to consider whether a discharge based on several reasons, at least one of which is impermissible under section 704(a), violates an employee's rights," it is by now clear, where motives are mixed, that the impermissible motive must be a determinative factor in the employer's decision if plaintiff is to prevail in proceedings of the present nature. *See Loeb v. Textron*, 600 F.2d 1003, 1019–20 (1st Cir. 1979) (age discrimination). The court here was persuaded that Monteiro's termination was "essentially the result of a challenge by a volatile and voluble employee to the authority of a hard-nosed and short-fused supervisor."[7] That it also found the insincere accusation of discrimination to be a factor in the termination decision does not undermine its ultimate ruling that no section 704(a) violation occurred.

■ Monteiro isolates one further passage of the district court's findings in framing his challenge to that court's rejection of his retaliatory discharge claim. He contends that the district court erred in stating that section 704(a) "applies to orderly opposition and not to an isolated flare-up." By itself, and out of context, the court's statement is doubtless too all-encompassing. Employee overreaction in "an isolated flare-up" might, in some other circumstances, be protected. *Cf. Trustees of Boston University v. NLRB*, 548 F.2d 391 (1st Cir. 1977). However, Monteiro's failure to demonstrate that he responded in opposition to actual or even supposed unlawful employment practices makes further discussion of that issue unnecessary.

---

7. It is apparent from the court's opinion that it accepted Poole's articulated reasons—Monteiro's refusal to work and his insubordination—as constituting the motivating reasons for discharge. *See generally, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Sweeney v. Board of Trustees of Keene State College*, 604 F.2d 106, 108 (1st Cir. 1979). Monteiro has presented us with no reason to disturb those findings. *See Sweeney, supra* at 109 (applying clearly erroneous standard).

*The judgment of the district court is affirmed.*