**John R. O'NEILL, Plaintiff,**

v.

**ALLENDALE MUTUAL INSURANCE COMPANY, et al., Defendants.**

**C.A. No. 96–1800–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

March 7, 1997.

Nils G. Peterson, Arlington, VA, for Plaintiff.

Robert L. Bronston, Gary A. Orseck, Mayer, Brown & Platt, Washington, D.C., Michael F. Rosenblum, Janet L. Hall, Mayer, Brown & Platt, Chicago, IL, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This Fair Labor Standards Act ("FLSA") case presents the question, not yet resolved in this circuit, whether an employee's informal, unofficial complaint to his or her employer concerning overtime compensation constitutes protected activity that triggers the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).

**I**[1]

Defendant, Universal Infrared Testing Service, Inc. ("Universal"), hired plaintiff, John O'Neill ("O'Neill"), in June 1994 to work as a "thermographer." In essence, thermographers inspect buildings and other structures with infrared cameras to identify problems with electrical components and then prepare reports detailing the results. O'Neill typically traveled by commercial airline on Sunday afternoon to locations he was assigned to inspect on Monday. Also typical for O'Neill was his work at home on Saturdays preparing his inspection reports. O'Neill kept track of this work time because Universal required him to furnish time records accounting for his hours, including work-related travel and work at home. In general, O'Neill's recorded working time ranged from sixty (60) to seventy (70) hours per week.

In January 1995, defendant, Allendale Mutual Insurance Company ("Allendale"), purchased Universal's assets and established a new corporate entity, defendant, Infrared Testing Inc. ("Infrared"). Infrared retained O'Neill and employed three other thermographers in the East region. Unlike Universal, Infrared instructed its employees not to submit time records. O'Neill claims Infrared purposefully changed the reporting policy to sidestep its obligation under the FLSA to pay overtime for hours worked in excess of forty per week.

Defendant, Terry Malagoli ("Malagoli"), who worked for Universal as a salesman, first met O'Neill in June 1994 when he interviewed O'Neill for the thermographer position. Then, when Allendale purchased Universal's assets and established Infrared, Malagoli was hired to be Infrared's President. At this point, according to O'Neill, Malagoli assumed an active role in O'Neill's activities. Specifically, O'Neill directed his

---

1. For the purpose of deciding defendants' motion to dismiss Count II under Rule 12(b)(6), Fed. R.Civ.P., the operative facts as alleged by plaintiff, the non-moving party, must be accepted as true. *See Estate Const. Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213, 217–18 (4th Cir. 1994); *Martin Marietta Corp. v. International Telecommunications Satellite Org.,* 991 F.2d 94, 97 (4th Cir.1992).

expense reports to Malagoli on a regular basis and Malagoli routinely approved them. Also, Malagoli signed O'Neill's reimbursement checks and sent O'Neill's employment contract to Virginia. Further, O'Neill alleges that Malagoli traveled to Virginia in 1995 to meet with him and to tour Infrared's office there. Apparently, Malagoli took O'Neill to breakfast to discuss O'Neill's salary and his future with Infrared. During the course of their breakfast meeting, O'Neill complained to Malagoli about Infrared's failure to pay overtime.

In September 1996, O'Neill again requested that Infrared pay him additional compensation for overtime work. Although this request was denied, O'Neill never filed a formal complaint with the Department of Labor. He protested Infrared's denial and an Infrared official responded by advising O'Neill that he should resign if he did not like the pay. Subsequently, on September 27, 1996, Infrared terminated him.

On December 20, 1996, O'Neill filed this two count complaint against defendants' Allendale, Universal, Infrared, and Malagoli. In Count I, O'Neill alleges that defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 201, *et. seq.* Specifically, O'Neill alleges that he regularly worked in excess of forty hours per week and that he received no requisite overtime compensation. In Count II, O'Neill claims that Infrared terminated him in retaliation for his requests for overtime compensation in violation of 29 U.S.C. § 215(a)(3).

On February 4, 1997, defendants Infrared and Malagoli filed the instant motion to dismiss Count II for failing to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P. The Court heard oral argument and granted the

motion.[2] *O'Neill v. Allendale Mutual Insurance Co.,* C.A. No. 96–1800–A (Order, February 28, 1997). This Memorandum Opinion elaborates the Court's ruling from the bench.

**II**

■ O'Neill, who worked sixty (60) to seventy (70) hours per week, alleges that he was sacked because he persistently demanded overtime compensation for the extra hours he worked. The parties dispute whether Infrared's sacking of O'Neill, assuming it occurred as alleged, is actionable retaliation under the FLSA. More particularly, the parties dispute whether O'Neill's persistent informal complaints about not receiving overtime compensation constitute protected activity under the FLSA. Thus, the dispositive issue here is whether the FLSA's anti-retaliation provision prohibits employers from taking adverse employment actions against those employees who complain informally to their employers about the employer's failure to pay for overtime work.

Analysis properly begins with the language of § 215(a)(3), the FLSA provision that defines actionable retaliation. Specifically, § 215(a)(3) prohibits employers from taking adverse employment actions against employees who assert their FLSA rights in three enumerated ways. Thus, employees trigger the anti-retaliation provision when they have either: (1) "filed any complaint or instituted or caused to be instituted any proceedings" under the FLSA; (2) "testified or is about to testify in any [FLSA] proceeding"; or (3) "served or is about to serve on an industry committee".[3]

■ This provision could scarcely be clearer. It defines in clear and unambiguous language three specific categories of conduct

---

**2.** Infrared and Malagoli also filed three other motions: (1) Malagoli's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P.; (2) Infrared's and Malagoli's joint motion to dismiss for improper venue under Rule 12(b)(3), Fed.R.Civ.P., or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a); and (3) Infrared's motion to stay discovery under Rule 26(c), Fed.R.Civ.P. The Court denied each of these motions from the bench. *O'Neill v. Allendale Mutual Insurance Co.,* C.A. No. 96–1800–A (Order, February 28, 1997). This

Memorandum Opinion does not address these rulings.

**3.** In full, § 15(a)(3) makes it unlawful:

to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

for which retaliation is prohibited. And it does so in terms that make unmistakably clear that the three categories of conduct comprise the complete universe of protected activity, not just an exemplary or *ejusdem generis* listing of such activities. It follows that the FLSA's protection against retaliation by an employer is triggered only by the specific conduct set forth in § 215(a)(3) of the Act. Thus, unless the conduct claimed to be the trigger for the retaliatory act falls within one of the three specified protected activity categories, the provision does not apply and there is no actionable retaliation under the FLSA.

That is precisely the case here. O'Neill claims that he was fired because he complained orally to Infrared personnel, including Malagoli, about the company's refusal to pay him compensation for his overtime work. But the well-defined universe of protected activities does not encompass such informal, unofficial protests. Put another way, O'Neill did not engage in any protected activity as defined in § 215(a)(3) of the FLSA and, as a result, he may not recover damages for retaliatory discharge under the FLSA based on his complaints.

■■■ Further support for the result reached here is found by comparing § 215(a)(3) with Title VII's anti-retaliation provision. Unlike the FLSA, Title VII contains a separate, additional clause that prohibits employers from taking adverse employment actions against those employees who have simply "opposed" unlawful employment practices.[4] This "opposition clause," as it has come to be known, is, on its face, quite broad and expansive and Predictably "has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir.1981).[5] The same result does not obtain with respect to FLSA because Congress chose not to include an "opposition clause" in § 215(a)(3). Congress must be held to the plain meaning of its statutes; it must be held to have said what it meant. Title VII includes an "opposition clause" and the FLSA does not. This telling difference points persuasively to the conclusion that protected activity under the FLSA is a smaller universe of conduct than the universe of protected activity under Title VII.[6] The latter includes informal protests or complaints, the former explicitly does not.

The question whether informal complaints or protests constitute protected activity under the FLSA is novel and unresolved in this circuit, but not elsewhere. In fact, most courts that have considered this question, including five circuit courts of appeal, have held, contrary to the result reached here, that informal complaints, even though not listed as a protected activity in § 215(a)(3), are sufficient to trigger the FLSA's anti-retaliation protection.[7] Only the Second Cir-

---

4. Title VII's anti-retaliation provision, § 704(a), 29 U.S.C.2000e–3(a), makes it:

   an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

5. Cases interpreting Title VII's anti-retaliation provision to include unofficial complaints are legion. *See, e.g., Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992); *Rollins v. State of Florida Dept. of Law Enforcement*, 868 F.2d 397 400 (11th Cir.1989); *Sias v. City Demonstration Agency*, 588 F.2d 692, 694–96 (9th Cir.1978); *Novotny v. Great Am. Federal Sav. & Loan Ass'n*, 584 F.2d 1235, 1259 (3d Cir.1978), *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Jones*

*v. Lyng*, 669 F.Supp. 1108, 1121 (D.D.C.1986); *Hearn v. R.R. Donnelley & Sons Co.*, 460 F.Supp. 546, 548 (N.D.Ill.1978); *Hearth v. Metropolitan Transit Comm'n*, 436 F.Supp. 685, 688–89 (D.Minn.1977).

6. To be sure, it is not difficult to advance reasons why, as a matter of public policy, the FLSA's anti-retaliation protection should extend to informal employee complaints about an employer's refusal to pay overtime compensation. But where Congress has made the public policy decision and expressed it clearly, as in § 215(a)(3)'s plain and unambiguous language, it is not open to courts to trump or change this decision in the name of statutory interpretation. Courts have no license or authority to disregard a statute's plain language for the purpose of reaching a result the court deems more sensible.

7. *See e.g., EEOC v. Romeo Community Schools*, 976 F.2d 985, 989 (6th Cir.1992) (holding that an

cuit, in *Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994), has reached the opposite conclusion.[8] There, for essentially the same reasons stated here, the Second Circuit held that "[t]he plain language of [§ 215(a)(3)] limits the cause of action to retaliation for filing complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." *Id.* at 55. Should Congress, on reflection, consider sound public policy to require a different result, it may follow the example of Title VII and amend the FLSA to add an "opposition clause."

Accordingly, for the foregoing reasons, the motion to dismiss Count II was granted and an appropriate Order has already issued.

The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record.

employee's informal complaint is sufficient to trigger the anti-retaliation protection of the FLSA); *Crowley v. Pace Suburban Bus Div. Of Regional Transp. Authority*, 938 F.2d 797, 798 n. 3 (7th Cir.1991); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir.1989) ("The charging parties did not perform an act that is explicitly listed in the FLSA's anti-retaliation provision; however, we conclude that the unofficial complaints expressed by the women to their employer about unequal pay constitute an assertion of rights protected under the statute."); *Brock v. Richardson*, 812 F.2d 121, 124 (3d Cir. 1987) (interpreting the FLSA's anti-retaliation provision to cover "activities that might not have been explicitly covered by the language"); *Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 387 (10th Cir.1984) (finding that "[t]he Act also applies to the unofficial assertion [of] rights through complaints at work").

**8.** The Second Circuit's opinion in *Lambert* followed the analytical framework, and espoused the reasoning, of Judge Suhrheinrich's dissent in *Romeo Community Schools*, 976 F.2d at 990 (interpreting the Equal Pay Act, 29 U.S.C. § 206(d)(1), which directly incorporates § 215(a)(3) of the FLSA).