COLLOTON, Circuit Judge,
dissenting.
The district court concluded that Shana Donathan presented insufficient evidence *744 to support a finding that Oakley Grain unlawfully retaliated against her because she opposed an unlawful employment practice. I would affirm the judgment dismissing her complaint on either of two alternative grounds.
Donathan complained about unequal pay based on sex at Oakley Grain in an e-mail to company president Dennis Oakley on January 23, 2014. Oakley Grain laid off five employees, including Donathan, on January 31, 2014. Donathan then brought this action and included claims alleging sex discrimination in wages. The district court ruled that Donathan did not establish a prima, facie case of unlawful sex discrimination and dismissed those claims. Dona-than did not appeal that ruling, and it is final.
Donathan also brought three “retaliation” claims based on Oakley Grain’s decision to terminate her on January 31 and to refrain from rehiring her on February 3. One claim is based on Title VII of the Civil Rights Act. The majority never refers to statutory text, but the relevant provision states that it shall be an unlawful employment practice for an employer to discriminate against an employee “because [s]he has opposed any practice made an unlawful employment practice by this subchap-ter.” 42 U.S.C. § 2000e-3(a).
Donathan claims that Oakley Grain discriminated against her because she opposed unequal pay based on sex at the company. In fact, however, the district court ruled that Oakley Grain did not engage in the unlawful employment practice that Donathan purported to oppose, and Donathan does not dispute that ruling. She did not, therefore, “oppose[ ] any practice” that was “made ... unlawful” by Title VII. A reader examining the statutory text might naturally conclude that the absence of an unlawful employment practice requires dismissal of Donathan’s retaliation claim as well.
In 1981, however, this court ruled that “as long as the employee had a reasonable belief that what was being opposed constituted discrimination under Title VII, the claim of retaliation does not hinge upon a showing that the employer was in fact in violation of Title VII.” Sisco v. J.S. Alberici Constr. Co., 655 F.2d 146, 150 (8th Cir. 1981) (quoting Hearth v. Metro. Transit Comm’n, 436 F.Supp. 685, 688 (D. Minn. 1977)). The court adopted the decision of a district court which reasoned that requiring proof of opposition to a practice that was actually unlawful would chill informal opposition to perceived discrimination and unnecessarily encourage resort to formal complaints of discrimination to gain protection. Hearth, 436 F.Supp. at 688-89. Therefore, Hearth concluded, opposition is protected under Title VII “even if the employee turns out to be mistaken as to the facts.” 436 F.Supp. at 689. Sisco also cited Berg v. La Crosse Cooler Co., 612 F.2d 1041, 1045 (7th Cir. 1980), where the court acknowledged Hearth, rejected a “literal reading” of the statute, and invoked what Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), described as the “familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.” Id. at 459, 12 S.Ct. 511; see also Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1978) (agreeing with Hearth).
It might be suggested that Sisco was a product of a different era in which fealty to text played a lesser role in statutory interpretation. The opinion, after all, followed the Seventh Circuit in Berg, which in turn relied on Holy Trinity, “a decision that the Supreme Court stopped relying on more than two decades ago.” Antonin Scalia & *745 Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 12 (2012). But the Supreme Court, while noting the “reasonable belief’ issue in Clark County School District v. Breeden, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam), had “no occasion to rule on the propriety of this interpretation.” Id. at 270, 121 S.Ct. 1508. Sisco therefore governs this panel as circuit precedent.
Even so, to prove a meritorious retaliation claim under Title VII, Donathan must show that her opposition- to alleged sex discrimination in Oakley Grain’s wages was objectively reasonable.[6] In determining whether an employee reasonably believed that an employer’s conduct was unlawful, we must consider settled legal standards under Title VII. See Breeden, 532 U.S. at 270, 121 S.Ct. 1508. Here, Do-nathan’s allegation of sex discrimination in wages under Title VII is governed by the standards of the Equal Pay Act, 29 U.S.C. § 206(d). Taylor v. White, 321 F.3d 710, 715 (8th Cir. 2003). That law requires proof of unequal pay^at the same establishment, where “establishment” is defined as “a distinct physical place of business” instead of a business enterprise. Price v. N. States Power Co., 664 F.3d 1186, 1194 (8th Cir. 2011). “Only in unusual circumstances” — such as where a central administrative unit hires all employees, sets wages, and assigns the location of employment — “may two or more distinct physical portions of a business enterprise [be treated] as a single establishment.” Id. (alteration in original) (internal quotations omitted).
Oakley Grain operates five separate facilities in different locations. Donathan worked at the Yellow Bend establishment. Her alleged opposition to sex discrimination, set forth in the e-mail to Oakley Grain’s president, raised questions about safety bonuses and harvest bonuses. She said: “I see no difference in my position and the ones performed by the grain department at Pendleton for example except the fact that I am a female.”
Donathan did not complain about sex discrimination in wages at the same establishment. Nor did she cite any facts that would justify treating Oakley Grain’s different physical places of business as one “establishment.” Even when she later had an opportunity to develop the record in her lawsuit, Donathan continued to argue that the court should consider whether she was paid differently than men at any Oakley Grain facility. Yet the district court determined that there was no evidence “that any of the facilities served the same clients, that day to day decision making was done in one central location for all facilities, that employees were hired at a central location and stationed at different facilities, or that the facilities were even located close to each other.”
No reasonable person could have believed that difference in bonus pay be *746 tween an employee at Yellow Bend and an employee at Pendleton violated Title VII. This is not a case, like the situation posited in the font of the “reasonable belief’ standard, where an employee reasonably believed that the employer was unlawfully discriminating, but ultimately was “mistaken as to the facts.” Hearth, 436 F.Supp. at 689. The facts cited by Donathan in her email did not support a reasonable belief that Oakley Grain was acting unlawfully.[7] We may affirm on any ground supported by the record, United States v. Lucas, 499 F.3d 769, 779 n.5 (8th Cir. 2007) (en banc), and dismissal of the Title VII retaliation claim could be affirmed on this alternative ground: Oakley Grain did not discriminate against Donathan for opposing in her email any practice that she reasonably believed was made an unlawful employment practice by Title VII.[8]
The second retaliation claim is based on the Arkansas Civil Rights Act. This statute forbids discrimination against any individual “because such individual in good, faith has opposed any act or practice made unlawful by this subchapter.” Ark. Code Ann. § 16-123-108(a). The Arkansas Supreme Court apparently has not elaborated on this standard, but the plain language suggests that a plaintiff seeking to prove unlawful retaliation must have opposed an act or practice that is unlawful under the ACRA. As written, the phrase “good faith” modifies the employee’s opposition to an act or practice made unlawful by the statute; it does not modify the employee’s-belief about whether an act or practice is unlawful. Under the plain language of the Arkansas statute, therefore, the absence of an unlawful act or practice would defeat Donathan’s retaliation claim. Even assuming, however, that the ACRA incorporates a “reasonable belief’ standard consistent with Eighth Circuit decisions under Title VII, see Helton v. Southland Racing Corp., 600 F.3d 954, 960-61 (8th Cir. 2010) (per curiam), Donathan’s ACRA claim fails like her claim under Title VII. -The ACRA’s prohibition on sex discrimination appears to be consistent with the prohibition under Title VII, see McCullough v. University of Arkansas for Medical Sciences, 559 F.3d 855, 860 (8th Cir. 2009); Flentje v. First Nat’l Bank of Wynne, 340 Ark. 563, 11 S.W.3d, 531, 534-35 (2000), so it was likewise unreasonable to believe that Oakley Grain’s bonus payments violated the ACRA.
*747 Donathan’s third retaliation claim is based on the Fair Labor Standards Act. This statute makes it unlawful “to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... under or related to this chapter.” 29 U.S.C. § 215(a)(3). The Equal Pay Act is part of the FLSA, and Donathan’s e-mail to Dennis Oakley likely constituted a complaint that asserted a violation of the statute. See Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011). Although the text of the retaliation provision does not say that the employee’s complaint must be supported by a reasonable belief that an employer was violating the Act, our precedent appears to have imposed that requirement. Brennan v. Maxey’s Yamaha, Inc., 513 F.2d 179, 181 (8th Cir. 1975); see Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984). Applying that standard, Donathan’s retaliation claim under the FLSA — like her claim under Title VII— fails for lack of a reasonable belief that Oakley Grain’s bonus payments violated the Equal Pay Act.
While it is worth avoiding a blithe assumption that Donathan engaged in activity that was protected under the statutes, I would also affirm the judgment on the ground applied by the district court. Even assuming that Donathan undertook protected activity, the district court correctly determined that there was insufficient evidence that Oakley Grain discriminated against her because of her opposition or complaint in the e-mail to Dennis Oakley. The majority’s contrary conclusion relies on factual assumptions that are too speculative to survive summary judgment.
The majority’s theory of a submissible case is that Oakley Grain determined to retaliate against Donathan because of her e-mail on January 23. The decision supposedly was reached in a telephone call between the company president and a facility manager ten minutes after Donathan’s email. The company then concocted an unnecessary layoff of five employees, including Donathan and Maggie Fletcher, on' Friday, January 31. The plan allegedly was to rehire three of them on the next business day, Monday, February 3, based on a phony “surprise” grain order to be received on Saturday, February 1. Because the company required one permanent office employee, the company’s scheme included a plot to rehire Fletcher rather than Donathan, and to cite Donathan’s early departure from work on Friday as the justification to prefer Fletcher.
This scenario is too far-fetched to support a reasonable finding that retaliatory motive was the but-for cause of the company’s adverse action against Donathan. The majority leaps to a conclusion about a discriminatory decision to terminate Dona-than based on unremarkable communications between company president Dennis Oakley and Yellow Bend manager Charlie Porter. When an employee writes to the company president with complaints about management at a facility, it is hardly suspicious that the president promptly notifies the manager of the facility and solicits his response. Responsive management does not support an inference of discrimination. As for the rehiring of employees after the layoff, there is no evidence to refute the company’s showing-that the grain order on Saturday was legitimate and unexpected. The majority highlights that there was no written contract for this order that would show its timing, but there is nothing in the record to show that the Saturday grain order was treated differently from similar orders. The majority miseharaeterizes *748 Porter’s testimony on this point.[9]
The notion that Oakley Grain knew all along that it would maintain an office position and schemed for a reason to replace Donathan with Fletcher unreasonably assumes clairvoyance by the company. There was no way to know before January 31 that Fletcher would voluntarily work a full day while Donathan would leave in the morning. The majority appears distracted by whether Donathan’s early departure on Friday was an “infraction” or inconsistent with the termination letter. The salient point, however, is not that Donathan violated any rule by departing early on Friday, but that Fletcher showed extra commitment to the company by staying. Donathan acknowledged that she would have been paid for working, and she knew that others were going to finish their shifts. In making its rehiring decisions, the company properly could favor a former employee who pitched in to assist the business on the day of the layoff over one who opted to leave at the first opportunity. Loyalty surely is a legitimate nondiscriminatory reason to prefer one former employee over another.
Stripped of speculative inferences, the majority opinion is a victory for inferring retaliatory intent from temporal proximity. See Hervey v. County of Koochiching, 527 F.3d 711, 727 (8th Cir. 2008) (Melloy, J., dissenting). The layoffs occurred eight days after Donathan’s e-mail to Oakley. But there is little else to support a finding that the company terminated her and then declined to rehire her because of her opposition to alleged sex discrimination in wages. The company proffered legitimate nondiscriminatory reasons for the layoff (reduced workload and budget constraints), for the prompt rehiring of some who were laid off (a surprise weekend grain order), and for the rehiring of Fletcher rather than Donathan (demonstrated loyalty by working on the day of the layoff). To show that a company’s stated legitimate reasons are a pretext for-retaliatory motive, an employee must present appreciable evidence beyond a temporal connection between the adverse action and alleged opposition to discrimination. Hervey, 527 F.3d at 726; Green v. Franklin Nat’l Bank, 459 F.3d 903, 916 (8th Cir. 2006). Donathan failed to do so here.
For these reasons, I would affirm the judgment.

. To be sure, Oakley Grain’s defense throughout has been that Donathan was not laid off because she made allegations of discrimination. But the company did not, as the majority asserts, ante, at 743 n.5, “expressly concede” in the district court that Donathan's e-mail complaint was objectively reasonable or that it was protected activity under the statutes. The cited passage acknowledged a potential chilling effect but did not address the statutory element of reasonableness: "Defendants admit for purposes of this motion that if Plaintiff had been laid off for making allegations of discrimination then such adverse employment action would chill a person of ordinary firmness from continuing to bring such allegations to the attention of an employer.” R. Doc. 28, at 9. The company’s statement on appeal that Donathan’s e-mail "is considered to be protected activity” referred with citation to the district court’s conclusion on that point; it was not an express concession that the conclusion was correct. Appellee’s Br. 11.

. There is no deficiency in the evidentiary record on protected activity, because Dona-than's e-mail speaks for itself, and the reasonableness of her complaint is an objective legal question. See Breeden, 532 U.S. at 270-71, 121 S.Ct. 1508. The majority, ante, at 743 n.5, mistakenly relies on facts and theories presented in the district court to find a jury question on whether Donathan's unsuccessful sex discrimination claim was reasonable. The relevant issue on the retaliation claim is the reasonableness of Donathan's e-mail complaint, which was based on a comparison of her position at Yellow Bend and positions in the grain department at Pendleton. Ante, at 737.

. Transcontinental Insurance Co. v. W.G. Samuels Co., 370 F.3d 755, 758 (8th Cir. 2004), cited by the majority, ante, at 743 n.5, said that this court may affirm on any ground raised in the district court, but did not limit the court's authority to affirm on other grounds supported by the record. See, e.g., United States v. Filker, 972 F.2d 240, 242 (8th Cir. 1992) (explaining that "an appellate court can affirm a judgment on any grounds supported by the record, whether or not raised by the parties in the district court”); id. at 242 n.2 ("If this court may reverse a district court on an issue not raised by the parties, a fortiori it may affirm on the basis of an un-raised issue.”). Any such limitation, moreover, would have been superseded by the en banc decision in Lucas, 499 F.3d at 779 n.5. By definition, the “pure dicta" in Gunderson v. BNSF Railway Co., 850 F.3d 962, 971-72 (8th Cir. 2017), did not state a rationale for affirming the district court, so the debate in that case is beside the point here.

. Porter testified that Oakley Grain had a contract for the surprise grain order and had a previous contract. He explained that there was no e-mail or writing that evidenced the surprise contract because it happened on a weekend. Donathan's counsel never elicited a response to his question about whether there was an e-mail or writing that evidenced the previous contract. App. Ill, pp. 40-41. There is no evidence, moreover, that the previous contract arose from an unexpected telephone order on a weekend, so a disparity in writings would not tend to show that the surprise contract or its timing was fabricated.