**F. Paul RIPP, on behalf of himself and on behalf of all those similarly situated, Plaintiff,**

v.

**DOBBS HOUSES, INC., et al., Defendants.**

**Civ. A. No. 73–368.**

United States District Court, N. D. Alabama, S. D.

Sept. 14, 1973.

William B. Pugh, Dawson & Pugh, Birmingham, Ala., for plaintiff.

Allen Poppleton, James P. Alexander, Bradley, Arant, Rose & White, Birmingham, Ala., for defendants.

## MEMORANDUM OF OPINION AND ORDER

GUIN, District Judge.

On April 13, 1973, F. Paul Ripp commenced this action in the Southern Division of the United States District Court for the Northern District of Alabama, against some five defendants—Dobbs Houses, Inc., Squibb-Beech-Nut, Inc., Airline Services Division of Dobbs Houses, Inc., Dobbs Houses Flight Kitchen of Birmingham, and an individual, identified as Jim Shaner, "Manager", of the Dobbs House Flight Kitchen. Plaintiff seeks to assert claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Civil Rights Act of 1871, 42 U.S.C. §.1985.

According to the allegations in plaintiff's complaint, during 1970 plaintiff, a white person, was employed at the Dobbs House Flight Kitchen at the Birmingham Municipal Airport. On December 22, 1970, he alleges that he was "illegally discharged because of his association and sociable attitudes toward his fellow employees who were of the Black race". Plaintiff further alleges that defendants maintained employment practices and policies which operated to discriminate against the employment opportunities of blacks.

Pursuant to F.R.Civ.P. Rule 12(b), defendants moved separately and severally, to dismiss plaintiff's complaint on the ground that it fails, for several reasons, to state claims against defendants upon which relief can be granted. Defendants make several contentions. First, all defendants urge that plaintiff's complaint does not state a cause of action under Title VII of the Civil Rights Act of 1964, as amended (the "Act"), because plaintiff does not claim to have been discriminated against on account of his race. Defendant Shaner, the individual defendant, who apparently was plaintiff's immediate supervisor, urges that no claim under Title VII may be stated with respect to him, in any event, because he is not an "employer" within the meaning of the Act.

Second, all defendants urge that plaintiff may not complain of discrimination under 42 U.S.C. § 1981, since that statute is limited in application by its terms, to racial discrimination. Third, defendants contend that no claim has been stated under 42 U.S.C. § 1985, because plaintiff has not averred that any defendants conspired to deprive plaintiff of protected rights, and because the white plaintiff cannot complain of invidious discrimination against blacks. Finally, with respect to the claims under both 42 U.S.C. §§ 1981 and 1985, defendants urge that any possible cause of action which conceivably may have been

stated is barred by the applicable one-year Alabama statute of limitations, with respect to all defendants except Dobbs Houses, Inc.

Having considered the pleadings, briefs, oral argument, and the affidavit of Larry D. Stebbins, the Court is prepared to decide the various issues raised by the motions.

In reaching its decisions, the Court is mindful of the fact that, for purposes of the motions to dismiss, the well-pleaded allegations of plaintiff's complaint are taken as admitted. Barnes v. Merritt, 376 F.2d 8 (5th Cir. 1967). Furthermore, the Court is cognizant of the Fifth Circuit's admonition that "procedural technicalities" should not operate to deprive a Title VII plaintiff of an opportunity to vindicate rights protected by the Act. Sanchez v. Standard Brands, Inc., 431 F.2d 455, 461 (5th Cir. 1970); Burns v. Thiokol Chemical Corp., 483 F.2d 300, 305 (5th Cir. 1973). With these considerations in view, the Court will consider the issues raised by defendants' motions to dismiss.

## PLAINTIFF'S TITLE VII CLAIMS

The fundamental prohibition which Title VII directs toward employers is found in Section 703(a) of the Act. In pertinent part that section provides:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to *his* compensation, terms, conditions, or privileges of employment, because of *such individual's* race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of *such individual's* race, color, religion, sex, or national origin (emphasis added).

The statutory language makes abundantly clear that an employer may not arbitrarily penalize any employee because of his race, or any other protected characteristic.

Significantly, plaintiff makes no complaint that he has suffered any detriment on account of his race. In paragraph 3 of his complaint, for example, plaintiff alleges that he was "employed by Defendant Dobbs House at its Birmingham Airport Facility until, to-wit, 22 December, 1970, when he was illegally discharged because of his association and sociable attitude toward his fellow employees who were of the Black race". The class, which plaintiff seeks to represent, is that group of persons which is affected by defendant's employment practices, which "tend to unlawfully restrict the free association of individuals" (paragraph 5 of plaintiff's complaint).

In paragraph 6 of his complaint, plaintiff alleges that he was discharged because he refused to discriminate against black employees; further, he alleges he was ordered "not to associate with black employees". While plaintiff makes these allegations concerning his allegedly restricted associations, he also avers that the defendant engaged in unlawful employment practices which operate to discriminate against black employees. Fairly stated, the gravamen of plaintiff's complaint is that defendants have abridged his freedom to associate with persons of his own choosing. See, e. g., Langford v. City of Texarkana, 478 F.2d 262 (8th Cir. 1973). The question is whether plaintiff has stated a claim for relief under Title VII which this Court may consider. The Court concludes that plaintiff has failed to do so.

The employment practices which plaintiff attacks in his complaint are practices which result in disparate treatment of black employees. Plaintiff avers that he is a white citizen. The

employment practices, subject to challenge in this action, have no impact upon plaintiff. It appears that plaintiff is without standing, and, further, that plaintiff is not a "person aggrieved" within the contemplation of the Act.

Neither counsel nor the court have found any cases which have directly dealt with a white plaintiff's Title VII challenge to employment practices which discriminate against blacks. However, in determining a class action issue, Judge Robinson touched upon the question of standing. In Martin v. Safeway Trails, Inc., 59 F.R.D. 683 (D. D.C.1973), the court held that a black male plaintiff could not appropriately represent a class attacking allegedly discriminatory employment practices, based upon both sex and national origin.

> It further appearing that the appropriate standards for determination for the class was set forth in Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968), to the effect that the action must meet the criteria of Rule 23 and that the Plaintiff must have standing and be aggrieved as to each issue sought to be raised, and it further appearing that the Plaintiff has no such standing or grievance as to discrimination based on sex or national origin and would not be a proper class representative with respect thereto under Rule 23(a) . . . *Id.* at 684.

It seems clear to the Court that if a black male plaintiff cannot represent a class of allegedly aggrieved females, a white plaintiff cannot represent allegedly aggrieved blacks.

The question of standing has its origin in the requirement for a "case or controversy". Article III, Section 2, of the United States Constitution limits the judicial power to cases and controversies. *See generally*, 6 A. J. Moore, Federal Practice § 5711. That is, there must be an adversary interest between the parties before a federal court has the power to reach a decision.

As the Supreme Court noted in United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947):

> The constitution allots the nation's judicial power to the federal courts. Unless these courts respect the limits of that unique authority, they intrude upon powers vested in the legislative or executive branches. Judicial adherence to the doctrine of separation of powers preserves the courts for the decision of issues, between litigants, capable of effective determination. Judicial exposition upon political proposals is permissible only when necessary to decide definite issues between litigants. When the courts act continually within these constitutionally imposed boundaries of their power, their ability to perform their function as a balance for the people's protection against abuse of power by other branches of government, remains unimpaired. *Id.* at 89–90, 67 S.Ct. at 564–565.

In *Mitchell,* the Supreme Court refrained from considering whether the Hatch Act was constitutional, since none of the plaintiff's actions had subjected them to the prohibition of that act. In the instant case, the Court can conceive of no circumstances in which the plaintiff can bring himself within the purported class, which is allegedly affected by the practices which he currently is challenging.

This Court is especially chary of entrusting the enforcement of important rights, guaranteed by Title VII, to a person who is not affected by the employment practices which he alleges to be discriminatory. Indeed, not only is plaintiff not subject to the practices in which he asserts that defendants engage, but he is a member of the class (*i.e.,* white persons) which he avows that defendants favor. While the Court does not impugn the motives of the plaintiff, a holding which would permit a white plaintiff to attack practices which allegedly disadvantage blacks

would open Title VII to dangerous abuse. A Title VII plaintiff with no personal incentive to enforce the Act (or possibly an incentive to subvert it), would destroy the Act's enforcement mechanism.

■ In short, the Court believes that if defendants maintain practices which discriminate against blacks as plaintiff avers, the persons who are best situated to attack those practices are those persons who are in fact aggrieved. The Court believes that there can be no better insurance of vigorous enforcement of Title VII than the litigant who is genuinely aggrieved by the practices under attack. Paul Ripp is not that plaintiff.

Plaintiff, both in his oral argument and in his brief, urges that, even if he fails to state a claim under Section 703(a) of the Act, he has stated a claim under Section 704(a).

> Section 704(a) provides: It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by the subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this sub-chapter.

The Court concludes that Section 704(a) provides no comfort to the plaintiff for two reasons.

■■ First, the statutory scheme is such that it is clear that Section 704(a) exists to protect an employee's avenue to complain to the Equal Employment Opportunity Commission of practices which are prohibited by Section 703. No doubt, the framers were keenly aware of the fact that, in order for the Act to be effective, an employee must have protected access to the enforcement machinery. This is a familiar provision in federal laws governing the relationship between employer and employee. See, *e. g.*, the National Labor Relations Act, 29 U.S.C.A. § 158(a)(4), and the Fair La-

bor Standards Act, 29 U.S.C.A. § 215(a)(3). The Fifth Circuit has interpreted Section 704(a) in this fashion. Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1004–1007 (5th Cir. 1969). The plaintiff makes no claim that any defendant interfered with his access to the Equal Employment Opportunity Commission.

■ Second, even if the Court assumes that Section 704(a) of the Act is as broad as the plaintiff urges, the Court would still be obligated to dismiss the Title VII claim. Construing plaintiff's allegations most favorably to him, the Court concludes that his claim is basically that his employer allegedly deprived him of the freedom to associate with black employees. That claim is not protected by Section 704(a) of the Act in any respect. The Court concludes that plaintiff's claims under Title VII are due to be dismissed.

In view of the Court's decision with respect to plaintiff's Title VII claims, it is unnecessary to decide the other Title VII issues which the defendants have raised. Some comment, however, is appropriate.

It is not contested that the only defendant against whom unfair employment practice charges were filed with the Equal Employment Opportunity Commission was defendant Dobbs Houses, Inc. The record reflects that neither the individual defendant, Jim Shaner, nor Dobbs Houses' parent, the Squibb Corporation (erroneously described in the complaint as Squibb-Beech-Nut, Inc.) were served with Equal Employment Opportunity Commission charges. Furthermore, two of the defendants, Airlines Services Division of Dobbs Houses and Dobbs House Flight Kitchen of Birmingham, are not business entities at all.

■ The only defendant which was charged before the Equal Employment Opportunity Commission is Dobbs Houses, Inc. Plaintiff makes no claim that the other named defendants are necessary parties under F.R.Civ.P. Rule 19,

and the Court, based upon its consideration of Mr. Stebbins' affidavit, understands no justification for retaining the remaining four defendants as necessary parties. Unless a co-defendant is a necessary party under Rule 19, this Court will continue to hold that the filing of an unfair employment practice charge is an absolute predicate for an action under Title VII of the Civil Rights Act of 1964. Thus, even if the Court had found a cause of action under Title VII, Dobbs Houses, Inc., is the only defendant which the Court would have retained[1] upon the proper motion.

## CLAIMS UNDER 42 U.S.C. § 1981

Plaintiff also seeks to state a claim under the Civil Rights Act of 1866, 42 U.S.C. § 1981. That statute provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property *as is enjoyed by white citizens*, and shall be subject to like punishment, pains, penalties, taxes, licenses, and the exactions of every kind, and to no other (emphasis added).

This statute, enjoying a judicial resurrection in the 1970's, has been extended to encompass contracts with respect to private employment. See, *e. g.*, Waters v. Wisconsin Steel Works of International Harvester Company, 427 F.2d 476 (7th Cir. 1970), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151.

Plaintiff seeks to utilize this statute, which is not available to "white citizens", to support this Court's jurisdiction to hear his freedom of association claims. The Court will decline plaintiff's invitation to extend this statute beyond its reach.

Even in its resurrected state, Civil Rights Act of 1866 has been generally limited to its unequivocal terms. For example, in Perkins v. Banster, 190 F. Supp. 98 (D.Md.1960), affirmed, 285 F. 2d 426 (4th Cir. 1960), the court held:

> The complaint in this case claims jurisdiction under Title 42 U.S.C.A. §§ 1981 and 1983. Section 1981 is the equal rights section giving to non-white persons the same rights which are enjoyed by white persons. Since the plaintiff, obviously and admittedly, is a white person, § 1981 serves as no basis for jurisdiction in this case. *Id.* at 99.

Attempts to expand Section 1981 beyond its terms have generally met with failure. See, *e. g.*, Marshall v. Plumbers and Steamfitters Local Union No. 60, 343 F.Supp. 70 (E.D.La.1972); Schetter v. Heim, 300 F.Supp. 1070 (E.D.Wis. 1969). See also, *e. g.*, Abshire v. Chicago and Eastern Ill. R. R., 352 F.Supp. 601 (N.D.Ill.1972); Fitzgerald v. United Methodist Community Center, 335 F. Supp. 965 (D.Neb.1972); Williams v. School District, 340 F.Supp. 438 (D.C. Cal.1972); Harris v. International Tea Co., 4 FEP 5 (N.D.Ill.1971), affirmed, 454 F.2d 307 (7th Cir. 1972).[2]

In summary, the Court concludes that a white plaintiff cannot rely upon 42 U. S.C. § 1981 to press claims with respect to his private employment.

---

1. The Court does not deem it necessary to consider the defendant Jim Shaner's contention that an individual is not an "employer" under Title VII of the Act.

2. Counsel for both plaintiff and defendants have called the Court's attention to two cases which apparently permitted white plaintiffs to sue under 42 U.S.C. § 1981. Central Presbyterian Church v. Black Liberation Front, 303 F.Supp. 894 (E.D.Mo. 1969); and Gannon v. Action, 303 F.Supp. 1240 (E.D.Mo.1969). In both cases, the trial judge permitted white church members to sue, under the Reconstruction Civil Rights Acts (including 42 U.S.C. § 1981), black militants who embarked upon a systematic program of disrupting church services. The Court believes that to the extent that the Missouri cases are based upon § 1981, they represent aberration from the prevailing authority. This Court will decline to follow the Missouri cases.

## CLAIMS UNDER 42 U.S.C. § 1985

The plaintiff also asserts that this Court has jurisdiction under 42 U.S.C. § 1985. Section 1985 is divided into three paragraphs. The first paragraph gives to any person the right to be free from conspiracies to prevent either the acceptance or performance of duties relating to any federal office. The second paragraph permits all persons to be free from conspiracies which would deter or intimidate them from serving as witnesses. Neither paragraph can have any applicability to the case at hand.

Presumably, the plaintiff is relying upon 42 U.S.C. § 1985(3) which provides in pertinent part:

> If two or more persons in any State or Territory conspire or go into disguise on the highway or the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or de-

prived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

At first blush, it is difficult for the Court to understand how this provision, enacted to remedy the evils of night riding in the 1870's, has any application to an employee's claim against his employer in the 1970's. Again, the Court concludes that plaintiff has failed to state a claim upon which relief can be granted.

Significantly, there is no averment that any of the defendants conspired with any other defendant (or co-conspirator) to deprive plaintiff of any right, incident to his employment, protected by federal law. Such an averment is necessary in order to state a cause of action. See, e. g., Griffin v. Breckenridge, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 29 L. Ed.2d 338 (1971); Carroll v. Andrews, 438 F.2d 1221, 1222 (5th Cir. 1971).

Apart from plaintiff's failure to allege a conspiracy, as required by statute, the Court has grave doubts as to whether the plaintiff could state a claim in any event. Again, the Court faces the fact that plaintiff, in effect, is seeking redress for statutory rights which are not personal to him. In Griffin v. Breckenridge, *supra,* the Supreme Court outlined the elements of a cause of action under § 1985(3). The court noted:

> The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the Congressional purpose by requiring, as an element of the cause of action, a kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges or immunity, means that there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's actions (emphasis in original and footnote omitted). *Id.* at 102, of 403 U.S., at 1798 of 91 S.Ct.

The Court finds, taking plaintiff's complaint on its face, no allegation that plaintiff has been the victim of invidious discrimination. Indeed, by plaintiff's own averment, he is not a member of the class which is reached by the invidious discrimination which he alleges in his complaint. Thus, the Court holds that plaintiff has failed to state a claim under § 1985(3).

## THE STATUTE OF LIMITATIONS QUESTION

With respect to the question of the running of the statute of limitations in this case, the Court, in view of its holding with respect to claims raised by § 1981 and § 1985, is not obligated to consider the question of the running of the statute. However, in the interest of possible judicial economy, the Court will render an alternative holding relative to the running of the statute under §§ 1981 and 1985.

Federal procedure permits the statute of limitations to be raised in Rule 12(b)(6) motion to dismiss. See, *e. g.*, Jones v. Rogers Memorial Hosp., 143 U. S.App.D.C. 51, 442 F.2d 773 (1971). As Professor Moore has observed:

> It is now held that the defense of limitations may be raised by a motion to dismiss when the time alleged in the complaint shows that the action was not brought within the statutory period. Even where the defect does not appear on the face of the complaint, defendant should be able to raise it by motion to dismiss, accompanied by affidavits or other materials, which Rule 12(b) now permits the court to treat as motion for summary judgement. 2A J. Moore, Federal Practice ¶ 12.10, at pp. 2314–16 (footnotes omitted).

Thus, the question of the running of the statute of limitations is appropriately before the Court. Furthermore, plaintiff's complaint, coupled with the affidavit of Mr. Stebbins submitted by defendant, makes it clear that the statute has run, with respect to any colorable cause of action which might have been stated under §§ 1981 and 1985.

In his complaint, plaintiff avers that on December 22, 1970, he was discharged. Any possible cause of action which plaintiff may have had, came into effect at the time of his discharge in 1970. The Court's file indicates that this action was commenced on April 13, 1973, well over two years since plaintiff's discharge. The uncontested evidence before the Court reflects that the plaintiff filed charges with the Commission on January 7, 1971, against Dobbs Houses, Inc. There is no evidence in the record that plaintiff filed charges against any other defendant in this proceeding. Plaintiff has not filed an affidavit contesting the facts set out in the affidavit submitted by the defendant. The Court concludes, with respect to all claims under §§ 1981 and 1985(3), that the one-year Alabama statute of limitations bars plaintiff from proceeding against any defendant, save Dobbs Houses, Inc.

Neither 42 U.S.C. § 1981 or § 1985(3) provide limitations for the causes of action which they create. The federal courts, therefore, must look to the most nearly analogous state statute of limitation which will determine the time within which a cause of action may be commenced. 28 U.S.C. § 1652; 42 U.S. C. § 1988. The application of state limitation statutes for federally-created causes of action under the Reconstruction Civil Rights Acts, 42 U.S.C. §§ 1981–1985 is well settled. O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L. Ed. 980 (1914).

As the Fifth Circuit concluded in Beard v. Stephens, 372 F.2d 685 (5th Cir. 1967):

> Congress has created many federal rights without prescribing a period of enforcement. In such cases the federal courts borrow the limitations period prescribed by the state where the court sits. The applicable period of limitations is that which the state itself would enforce had an action seek-

ing similar relief been brought in the court of that state.

\*     \*     \*     \*     \*     \*

We look first to federal laws to determine the nature of the claim and then to the state court interpretation of the state's "statutory catalogue" to see where the claim fits into the state's scheme. *Id.* at 688.

See also, *e. g.*, Duncan v. Nelson, 466 F.2d 939 (7th Cir. 1972); Nevels v. Wilson, 423 F.2d 691 (5th Cir. 1970); Knowles v. Carson, 419 F.2d 369 (5th Cir. 1969).

The next step in resolving the question of the appropriate statute of limitations is to examine the claim raised by the plaintiff under Alabama law. The Court of Appeals in Sewell v. Grand Lodge of Int'l. Assoc. of Machinists and Aerospace Workers, 445 F.2d 545 (5th Cir. 1971), cert. denied, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972), carefully analyzed the applicable Alabama statute of limitations governing a federal statutory claim. In *Sewell*, a union business agent sued his employer labor organization for wrongful discharge. Plaintiff asserted that his discharge was unlawful because he had exercised his right of free speech, guaranteed to him under the provisions of the Labor Management Reporting and Disclosure Act of 1959. The defendant union raised the defense of the one-year Alabama statute of limitations. Judge Gewin, writing for a unanimous court, affirmed the district court's dismissal of plaintiff's complaint. In its decision, the Fifth Circuit determined that plaintiff's claim for violation of federal statutory law was essentially in the nature of a tort and concluded that Alabama's one-year statute would bar the case. The claims in this case also sound in tort.

The limitations statute, Title 7, Section 26, Code of Alabama, 1940 (Recomp. 1958), provides: "[A]ctions for any injury to the person or rights to another, not arising from contract, and not herein specifically enumerated", must be brought within one year.

This district court has determined that, with respect to 42 U.S.C. § 1981, the one-year statute applies. Buckner v. Goodyear Tire & Rubber Co., 339 F. Supp. 1108, 1117–1118 (N.D.Ala.1972), affirmed, 476 F.2d 1287 (5th Cir. 1973). Likewise, the Middle District of Alabama has also applied Alabama's one-year statute to a § 1981 claim. Henderson v. First National Bank of Montgomery, 344 F.Supp. 1373 (M.D.Ala.1972).

The one-year Alabama statute has been applied in actions brought under 42 U.S.C. § 1983. See, Boshell v. Alabama Mental Health Board, 473 F.2d 1369 (5th Cir. 1973) (per curiam); Johnson v. Yeilding, 165 F.Supp. 76 (N.D.Ala. 1968). Neither the Court nor counsel have found any Alabama cases with respect to limitations for an action brought under 42 U.S.C. § 1985.

However, the cause of action under § 1985 is an action for the vindication of federally-created rights; there is no specific federal statute of limitations for actions brought under § 1985; and it is clearly not an action arising under contract. Therefore, under the guidance of *Sewell, supra,* the Court holds that the one-year Alabama statute of limitations applies to causes of action brought under 42 U.S.C. § 1985.

In actions brought under § 1981, the Fifth Circuit has recognized the salutary policy of encouraging plaintiffs to utilize administrative remedies. See, Mizell v. North Broward Hosp. Dist., 427 F.2d 468 (5th Cir. 1970). This principle extends to encouraging a party to utilize whatever remedies are available to him within the Equal Employment Opportunity Commission. Thus, plaintiff's filing a charge in January, 1971, will toll the running of the § 1981 statute with respect to Dobbs Houses, Inc. However, since no other defendant was charged before the Commission the Court will apply the statute to the claims arising against all other defendants.

In summary, the Court concludes that the plaintiff has failed to state a claim

for relief against any defendant in this cause. Plaintiff has alleged unlawful employment practices, which would be subject to remedy in this Court. However, plaintiff simply is not a member of the group which is affected by the alleged disparate treatment. Plaintiff's real grievance appears to be that his employer has abridged his freedom of association. That complaint is not cognizable under Title VII of the Civil Rights Act of 1964, or the older Civil Rights Acts.

It is hereby ordered, adjudged and decreed that the complaint in this cause, be, and hereby is, dismissed. Each party shall bear its own costs.