**Denise M. CHACON, Plaintiff,**

v.

**Captain Gary OCHS, et al., Defendants.**

**No. SACV 90–679–GLT.**

United States District Court,
C.D. California.

Dec. 23, 1991.

Robert W. Thompson, A Professional Law Corp., Colton, Cal., for plaintiff.

Daniel E. Lungren, Atty. Gen. of State of Cal., Henry G. Ullerich, Supervising Deputy Atty. Gen., Silvia M. Diaz, Deputy Atty. Gen., Los Angeles, Cal., for defendants Norma Law and Gary Ochs.

1. Plaintiff claims her supervisor made periodic derogatory comments about hispanics, mimicked and made fun of hispanics, and told repeated and offensive Mexican jokes.

2. Plaintiff alleges that, following her complaint, her supervisor wrote a negative work performance evaluation concerning plaintiff, encouraged other supervisors to obtain information on which to write negative work evaluations, called plaintiff a "demon" during a supervisors' meeting, and instructed the other supervisors to "write her up" at every opportunity.

**OPINION AND ORDER**

TAYLOR, District Judge.

This case presents the issue, apparently not the subject of prior Ninth Circuit authority, whether Title VII, 42 U.S.C. Section 2000e et seq., prohibits discrimination based on an interracial association. This court holds that it does.

## I. BACKGROUND

In this civil rights action under Title VII, 42 U.S.C. § 2000e et seq., plaintiff, a white woman married to a hispanic man, alleges that individuals at her place of employment with the State of California made denigrating comments about the hispanic race, knowing her husband and children were hispanic.[1] Plaintiff alleges that these comments resulted in her being forced to work in a "hostile environment," exposing her to discrimination based on race in violation of Title VII. She also alleges that, as a result of her complaints about these comments, her superiors began a pattern of retaliation harassment.[2]

Defendants moved to dismiss the action, contending the complaint fails to state a claim upon which relief can be granted. Defendants contend the complaint is deficient because it does not allege plaintiff was discriminated against based upon *her* race, but only alleges she was discriminated against because of the race of another.

## II. DISCUSSION

Title VII of the Civil Rights Act of 1964 prohibits discriminatory practices based upon an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a).[3] The statute prohibits discrimination

3. Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1) provides:

It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

against individuals of all nationalities and origins. *See, e.g., McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (Title VII applies to white as well as african-american individuals).

Defendants argue the alleged discrimination complained of must be based upon plaintiff's own race for Title VII protections to apply. Defendants conclude plaintiff has failed to state a Title VII claim because she is white, and she claims discrimination from comments about hispanics, not whites.

Apparently no Ninth Circuit court has ruled whether Title VII violations include discriminatory employment practices based on an individual's association with people of a different national origin. Courts in other jurisdictions which have considered this question are divided on the issue. *Compare Whitney v. Greater New York Corp. of Seventh–Day Adventists,* 401 F.Supp. 1363 (S.D.N.Y.1975) *and Ripp v. Dobbs Houses, Inc.,* 366 F.Supp. 205 (N.D.Ala.1973). However, the better-reasoned decisions recognize such a Title VII violation.

In *Whitney,* a white plaintiff claimed Title VII discrimination based on a social relationship she was having with an african-american man. *Whitney,* 401 F.Supp. at 1365. The defendant moved to dismiss, noting the complaint failed to allege plaintiff was discharged because of *her* race, and that actually the race of her friend was at issue. The defendant contended a white plaintiff could not maintain a Title VII action based on discrimination against a minority group member. *Id.* at 1366.

The Southern District of New York rejected the defendant's argument and denied the motion to dismiss. The court held that Title VII did apply to discrimination based upon interracial relationships. The court reasoned that, if the plaintiff was discharged as a result of a social relationship with an african-american man, the plaintiff's race was as much a factor in the decision as that of her friend. If "she was discharged because she, a white woman, associated with a black, her complaint falls within the statutory language that she was 'discharge[d] ... because of her race.' " *Id.* at 1366 (referring to the Title VII statute, 42 U.S.C. § 2000e–2(a)(1)).

Similarly, in *Reiter v. Center Consolidated School District,* 618 F.Supp. 1458, 1459–1460 (D.Colo.1985), the court found that "discriminatory employment practices based on an individual's association with people of a particular race or national origin are prohibited under Title VII." In *Reiter* the plaintiff alleged she was refused employment because of her association with the Hispanic community. The court noted the supporting rationale of the law that "the plaintiff was discriminated against on the basis of [her] race because [her] race was different from the race of the people [she] associated with." *Id.* at 1460.

The Eleventh Circuit adopted this reasoning in *Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888 (11th Cir.1986). The circuit applied Title VII to a white plaintiff's claim that he was discriminated against because he was married to an african-american woman. *Id.* at 889. The circuit reasoned that Title VII prescribes all race-conscious discriminatory practices, and held that a claim of discrimination based upon an interracial marriage or an interracial association is, by definition, racially-based discrimination. *Id.* at 892.

On the other hand, a few courts disagree with the conclusion that Title VII applies to interracial associations. *See, e.g., Ripp v. Dobbs Houses Inc.,* 366 F.Supp. 205 (N.D.Ala.1973); *Adams v. Governor's Committee on Post–Secondary Education,* 26 F.E.P. Cases 1348 (N.D.Ga. 1981).

In *Ripp* a white male asserted a Title VII action, claiming he was discharged because of his association with black employees. *Ripp,* 366 F.Supp. at 207. The court dismissed the complaint because the plaintiff made no allegation that he suffered any detriment based upon *his* own race. *Id.* at 208. The court reasoned that the plaintiff had failed to established that *he* was aggrieved by the improper employment practices. *Id.* at 208–209.

**682**

Similarly, the *Adams* court, relying on *Ripp,* held that a white man who alleged his employment was terminated because of his interracial marriage failed to state a claim under Title VII because he did not claim he was discriminated against because of *his* race. *Adams,* 26 F.E.P. 1348.

This court adopts the Eleventh Circuit's view expressed in *Parr,* and rejects the reasoning in *Ripp* and *Adams* as inconsistent with both the language and intent of Title VII. Title VII prohibits race-conscious discriminatory practices. Applying Title VII protections to discrimination based on an interracial relationship is consistent with the very purpose of Title VII: by necessity, the race of the plaintiff is a factor affecting the conduct of the defendant.

This conclusion is consistent with the Equal Employment Opportunity Commission's interpretation of Title VII. In construing Title VII, courts customarily give deference to the constructions accorded to this Act by the EEOC, which is charged by Congress with the duty of interpreting, administering, and enforcing Title VII. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 279, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976); *Griggs v. Duke Power Co.,* 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158, 165 (1971) (the EEOC's interpretation of Title VII is to be accorded "great deference"). The EEOC has consistently held that an employer who takes adverse action against an employee or a potential employee because of interracial association violates Title VII. *See* Decision No. 71–909, 3 F.E.P. 269 (1970) (Title VII applied to a white employee's claim that he was discharged because of associations with african-american employees); Decision No. 71–1902, 1973 EEOC Dec. (CCH) ¶ 6281 (April 29, 1971) (charging party's interracial dating was a factor in discharging her and thus presented a Title VII claim); Decision No. 76–23, 1983 EEOC Dec. (CCH) ¶ 6615 (Aug. 25, 1975) (Title VII claim alleged where job applicant not hired due to his white sister's relationship with an african-american); Decision No. 79–03, 1983 EEOC Dec. (CCH) ¶ 6734 (Oct. 6, 1978) (while evidence did not support the allega-

tion, it was recognized that an interracial relationship could be the basis for a Title VII claim).

### III. DISPOSITION

This Court concludes that Title VII prohibits race conscious discriminatory practices, including discrimination based on interracial association. The complaint sufficiently alleges that discriminatory conduct occurred in violation of Title VII protections. Defendants' motion to dismiss for failure to state a claim is denied.