Pamela CHANDLER; Deborah Emerson; Syretha Moore; and Darlene Turner, Plaintiffs

v.

FAST LANE, INC.; and M.A. Wallace, as Owner and Operator of Fast Lane, Inc., Defendants.

Civ. No. LR–C–94–435.

United States District Court, E.D. Arkansas, Western Division.

Nov. 15, 1994.

John W. Walker, John W. Walker, P.A., Little Rock, AR, for plaintiffs.

Robert Kenny McCulloch, Barber, McCaskill, Amsler, Jones & Hale, P.A., Little Rock, AR, for defendants.

## MEMORANDUM OPINION AND ORDER

EISELE, District Judge.

Before the Court is defendants' Motion to Dismiss,[1] filed in connection with plaintiffs' Complaint[2] alleging various causes of action under 42 U.S.C.A. § 1981 (West 1994), as well as several untimely claims filed under Title VII, 42 U.S.C.A. § 2000e to 2000e–17 (West 1981 & Supp.1994).[3] Also pending before the Court is plaintiffs' Motion for Leave to Amend Complaint,[4] in which they seek to correct the defects in their Title VII causes of action. Plaintiffs have filed a response[5] opposing defendants' motion, and defendants have likewise responded[6] in opposition to plaintiffs' motion. For the reasons stated in the following opinion, defendants' motion will be denied and plaintiffs' motion will be granted.

### I.

Defendants first argue that plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction. See Fed.R.Civ.P. 12(b)(1). The present dispute centers upon plaintiffs' various allegations of employment discrimination alleged to have been engaged in by defendants. Therefore, in compliance with the requirements of Title VII, plaintiffs initially filed charges against defendants with the Equal Employment Opportunity Commission (EEOC). See 42 U.S.C.A. § 2000e–5(e)(1) (West Supp.1994). However, defendant M.A. Wallace was not named as a respondent in these EEOC actions. Therefore, Wallace argues that plaintiffs' Title VII claims against him must be dismissed for failure to comply with procedural requirement imposed by § 2000e–5(e)(1).

In support of this argument, Wallace relies upon 42 U.S.C.A. § 2000e–5(e)(1) (West Supp.1994), which provides:

Commission. See id.; see also Jones v. American State Bank, 857 F.2d 494, 499–500 (8th Cir. 1988).

---

1. Document No. 3.

2. Document No. 1.

3. Plaintiffs' Title VII claims were untimely because they were filed before the expiration of the 180–day period contemplated by 42 U.S.C.A. § 2000e–5(f)(1)(A) (West Supp.1994) and without their having received appropriate "right-to-sue" letters from the Equal Employment Opportunity

4. Document No. 8.

5. Document No. 7.

6. Document Nos. 10–12.

A charge under [Title VII] shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred.

Given this statutory requirement, it has been held that persons not named as respondents in an EEOC charge may not generally be named as defendants in a later civil action brought under Title VII. *See Greenwood v. Ross,* 778 F.2d 448, 450–51 (8th Cir.1985) However, this is a prudential rule. It does not operate as a limitation upon the jurisdiction of the district court.[7] *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1983). Accordingly, the Eighth Circuit has concluded that a Title VII claimant's failure to name a party in an EEOC charge will not serve as a bar to a later civil action, provided that the unnamed party has been afforded adequate notice of the EEOC charge and the opportunity to participate in any proceedings held before the EEOC. *Greenwood v. Ross, supra,* 778 F.2d at 451; *accord Kizer v. Curators of Univ. of Mo.,* 816 F.Supp. 548, 551 (E.D.Mo.1993). Since Wallace is the owner and operator of the corporate defendant named in plaintiffs' EEOC charges,[8] the Court is satisfied that he was provided the requisite notice and opportunity be heard necessary to excuse plaintiffs' noncompliance with § 2000e–5(e)(1) in this case. Accordingly, the Court finds Wallace's argument on this point to be without merit.

█ Defendants next argue that the Court lacks jurisdiction over this controversy because the EEOC had not adjudicated the merits of plaintiffs' discrimination charges at the time their complaint was filed with this Court. However, shortly after defendants' filed their present motion, the EEOC issued "right-to-sue" letters to plaintiffs and terminated its involvement with plaintiffs' claims.

See 29 C.F.R. § 1601.28(a)(3) (1993). While this development has arguably mooted this particular aspect of defendants' motion, defendants have recently filed a document[9] with the Court in which they continue to "demand that the EEOC issue a final determination on the merits of [plaintiffs'] charges ... prior to this Court proceeding further." Defendants have also persisted in arguing that plaintiffs' complaint should be "dismissed or held in abeyance until the EEOC has made a final determination." As defendants have been nothing short of adamant in their insistence that this issue be addressed, the Court will ignore the mootness issue and proceed to the merits of defendants' argument.[10]

Defendants' demands evidence a fundamental misunderstanding of the controlling law. The United States Supreme Court has unequivocally held that a Title VII litigant is not required to await the EEOC's final determination of the merits of her claim before bringing an action thereon in the district court. *Occidental Life Ins. Co. of Cal. v. Equal Employment Opportunity Comm'n,* 432 U.S. 355, 366, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977). Indeed, Title VII specifically provides that, as long as the EEOC has been afforded an appropriate opportunity to act upon a discrimination claim, a claimant is not required to await the EEOC's final decision on the merits before commencing a civil action in the district court. 42 U.S.C.A. § 2000e–5(f)(1)(A) (West 1981). As the Supreme Court has explained:

[A] complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but he must wait 180 days before doing so. After waiting for that period, the complainant may either file a private action within

---

7. It follows, therefore, that Wallace erred in premising this aspect of his motion upon Rule 12(b)(1). He should have presented this argument in the context of Rule 12(b)(6). However, the Court elects to excuse this procedural defect and to consider the merits of Wallace's argument.

8. The Court notes that Wallace has never contested the accuracy of this factual allegation made by plaintiffs.

9. Document No. 12.

10. The Court notes that because the factual circumstances surrounding defendants' argument appear to present an issue that is capable of repetition yet evading review, there is some question as to whether defendants' argument on this point is, in fact, moot. *See generally Beck v. Missouri State High Sch. Activities Ass'n,* 18 F.3d 604, 606 (8th Cir.1994).

90 days after EEOC notification [11] or continue to leave the ultimate resolution of his charge to the efforts of the EEOC.

. . . .

. . . [T]he purpose of this provision [is] to afford an aggrieved person the option of withdrawing his case from the EEOC if he [is] dissatisfied with the rate from which his charge [is] being processed. . . .

*Occidental Life Ins. Co. of Cal. v. Equal Employment Opportunity Comm'n, supra,* 432 U.S. at 361–62, 97 S.Ct. at 2452–53. Furthermore, if the EEOC determines that it will be unable to complete its administrative proceeding within this 180–day period, the EEOC "must issue a 'right to sue' letter notifying the complainant of his right to bring an action within 90 days." *New York Gaslight Club, Inc. v. Carey, supra,* 447 U.S. at 65, 100 S.Ct. at 2031; *see also* 29 C.F.R. § 1601.28(a)(2) (1993).

Plaintiffs' claims were filed with the EEOC on July 9, 1994. However, on October 10, 1994 plaintiffs received their "right-to-sue" letters, which indicated that although "less than 180 days have expired since the filing of [their] charge[s], . . . the [EEOC] will be unable to complete its process within 180 days from the filing of the charge." See 29 C.F.R. § 1601.28(a)(2) (1993). The EEOC further indicated that it was terminating its involvement with plaintiffs' claims, see 29 C.F.R. § 1601.28(a)(3) (1993), thereby abrogating plaintiffs' need to await the running of the full 180–day period before commencing this action.[12] *See* 42 U.S.C.A. § 2000e–5(f)(1)(A) (West 1981) ("If a charge filed with the [EEOC] pursuant to subsection (b) of this section is dismissed by the [EEOC], . . . a civil action may be brought against the

respondent named in the charge . . . by the person claiming to be aggrieved. . . ."); *cf. Carter v. Smith Food King,* 765 F.2d 916, 923 (9th Cir.1985) ("A right-to-sue letter would be a contradiction in terms if it did not mean that the recipient . . . had met all the statutory prerequisites to the filing of a lawsuit."). Thus, there is no question that plaintiffs have successfully run the procedural gauntlet necessary to bring their Title VII claims before this Court. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222–23 (8th Cir.1994). Accordingly, it is therefore ORDERED that defendants' Motion to Dismiss, improperly filed under Rule 12(b)(1) be, and it is hereby DENIED.

■ The Court has difficulty in understanding defendants' failure to withdraw their "12(b)(1)" motion upon plaintiffs' receipt of their "right-to-sue" letters. In similar situations sanctions have been imposed. *See* Fed.R.Civ.P. 11(b)(2); *see also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 400, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990) (the district court is afforded broad discretion to determine whether Rule 11 sanctions are appropriate); *Carman v. Treat,* 7 F.3d 1379, 1381–82 (8th Cir.1993) (same). Nevertheless, while the Court feels obligated to comment that defendants' continued efforts to advance this motion after being notified that plaintiffs had received their "right-to-sue" letters bordered on the frivolous, at least with respect to the corporate defendant named in this action, the Court declines to

---

**11.** This notification generally takes the form of what has become known as a "right-to-sue" letter. See *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 65, 100 S.Ct. 2024, 2031–32, 64 L.Ed.2d 723 (1980).

**12.** Obviously, once the EEOC has terminated its involvement with a claim pursuant to 29 C.F.R. § 1601(a)(2), the claimant is no longer required to wait 180 days before commencing a civil action in the district court. Were the Court to conclude otherwise, the procedural requirements of Title VII would be capable of yielding an absurd result. Under a contrary interpretation of Title VII, if the EEOC terminated its involve-

ment with a claim as described above within ninety days of the claim's filing date, the claimant would be unable to comply with both the 180–day waiting period and the 90–day filing period imposed by § 2000e–5(f)(1)(A). Since such an interpretation would have the potential to render one of these statutory requirements ineffective, it must surely be avoided. *See Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous. . . .").

impose sanctions upon defendants *sua sponte.*

## II.

■■■ Defendants have also argued that plaintiff Chandler's Title VII claim should be dismissed for failure to state a claim upon which relief can be granted. See Fed. R.Civ.P. 12(b)(6). In evaluating the merits of this motion, the Court is required to accept the allegations of plaintiffs' complaint as true, at least in so far as these allegations relate to Chandler's Title VII claim. *Albright v. Oliver,* — U.S. —, —, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Hamm v. Groose,* 15 F.3d 110, 112 (8th Cir. 1994). Moreover, the Court may grant defendants' motion only if, after so viewing the pleadings, it is patently clear that there is no set of facts which Chandler could prove which would entitle her to relief under Title VII. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Forbes v. Arkansas Educ. Television Communication Network Found.,* 22 F.3d 1423, 1427 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994).

In the complaint filed with the Court, Chandler (who is white) alleges that she was the victim of a discriminatory employment practice at the hands of defendants. Chandler, a former manager of defendants' restaurant, claims that defendants thwarted her efforts to employ and promote African-American employees, and that as a result the conditions of her employment became so intolerable that she was forced to resign. Defendants argue that because they are alleged to have adopted discriminatory hiring and promotional practices targeted only at African-Americans, a white person has no standing to assert a Title VII claim premised upon these policies.

In support of their argument, defendants rely upon 42 U.S.C.A. § 2000e–2(a)(1) (West 1981), which provides:

> It shall be an unlawful employment practice for an employer [13] ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

It is true that the only "individuals" whom defendants are claimed to have failed or refused to hire or promote were African–Americans. However, by focusing on the "fail or refuse to hire" provision of § 2000e–2(a)(1), defendants' argument misperceives the unlawful employment practice alleged by Chandler. Chandler does not claim that she was a target of defendants' allegedly anti–African–American employment practices. Rather, Chandler argues that defendants' insistence that she enforce these practices violated her fundamental right to associate with African-Americans, *see Langford v. City of Texarkana,* 478 F.2d 262, 266–67 (8th Cir.1973); *cf. Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823–24, 18 L.Ed.2d 1010 (1967), and as a consequence defendants committed a separate violation § 2000e–2(a)(1) by engaging in an unlawful employment practice that "otherwise discriminate[d] against an[ ] individual," namely Chandler.

■■■ Although the Court recognizes that Chandler's Title VII claim is somewhat novel, it is of the opinion that such a claim, if proven, would state a cause of action under Title VII. A white person's right to associate with African–Americans is protected by § 1981.[14] *Patrick v. Miller,* 953 F.2d 1240, 1249–50 (10th Cir.1992); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988) (en banc); *Alizadeh v. Safeway Stores, Inc.,* 802 F.2d 111, 114 (5th Cir.1986); *Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 890 (11th Cir.1986); *Fiedler v. Marumsco Christian Sch.,* 631 F.2d 1144, 1149 (4th Cir.1980); *cf. Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 237, 90 S.Ct. 400, 404–05, 24 L.Ed.2d 386 (1969). Therefore, the Court concludes that an employer's implementation of an employment practice that impinges

---

13. Defendants have not argued that they are not "employers" as contemplated by Title VII. See 42 U.S.C.A. § 2000e(b) (West 1981).

14. Defendants have impliedly acknowledged that this right extends to workplace associations by not moving to dismiss Chandler's § 1981 claim.

upon this right is actionable under Title VII. *Parr v. Woodmen of the World Life Ins. Co.,* *supra,* 791 F.2d at 891–92; *Chacon v. Ochs,* 780 F.Supp. 680, 681–82 (C.D.Cal.1991); *Reiter v. Center Consolidated Sch. Dist. No. 26–JT,* 618 F.Supp. 1458, 1460 (D.Colo.1985); *Smith v. Barnwell,* 447 F.Supp. 970, 974–75 (M.D.N.C.1978); *Whitney v. Greater N.Y. Corp. of Seventh Day Adventists,* 401 F.Supp. 1363, 1366 (S.D.N.Y.1975); *cf. Stacks v. Southwestern Bell Yellow Pages, Inc.,* 27 F.3d 1316, 1327 n. 6 (8th Cir.1994). While the Court recognizes that the Eighth Circuit has not yet been required to address this issue directly, it is nevertheless convinced that the Eighth Circuit would choose, in a case such as this, to follow the lead of those courts which have dealt with the issue. *See Clayton v. White Hall Sch. Dist.,* 875 F.2d 676, 679–80 (8th Cir.1989) (holding that a white person has standing to assert a Title VII claim based upon a work environment alleged to be hostile to African–Americans).

■■■■■ Additionally, Chandler's allegations are sufficient to establish a Title VII claim under a separate provision of the statute. The relevant provision of Title VII is found in 42 U.S.C.A. § 2000e–3(a) (West 1981), which provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [s]he has opposed any practice made an unlawful employment practice by [Title VII]. . . .

In order to establish a *prima facie* case under the "opposition" clause of § 2000e–3(a), an employee must show: (1) that she was engaged in an opposition activity protected under Title VII; (2) that she was a victim of adverse employment action; and (3) that a causal nexus exists between these two events. *Sweeney v. City of Ladue,* 25 F.3d 702, 703 (8th Cir.1994); *Jackson v. St. Joseph State Hosp.,* 840 F.2d 1387, 1390 (8th Cir.), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102

L.Ed.2d 218 (1988). The Court has no doubt that an employee who exercises her authority to promote and employ African–Americans engages in protected "opposition" to her employer's unlawful employment practice which seeks to deprive African–Americans of such benefits. *See Equal Employment Opportunity Comm'n v. St. Anne's Hosp. of Chicago, Inc.,* 664 F.2d 128, 132–33 (7th Cir.1981). Thus, Chandler's allegations are clearly sufficient to meet the first requirement of a § 2000e–3(a) claim.

■■■■■ The Court further concludes that defendants' insistence that Chandler enforce such an employment practice, if proven, would certainly cause an "adverse employment action" to be visited upon her. Title VII forbids an employer from requiring its employees "to work in a discriminatorily hostile or abusive environment," *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1994); *see also Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65–67, 106 S.Ct. 2399, 2404–06, 91 L.Ed.2d 49 (1986), and included within this prohibition is the right of white employees to a work environment free from discrimination against African–Americans, or any other class of persons. *See Clayton v. White Hall Sch. Dist., supra,* 875 F.2d at 679. Indeed, subjecting an employee to such a hostile working environment may result in an actionable constructive discharge,[15] a result that is especially likely under facts similar to those presently alleged. Under Title VII, a constructive discharge occurs whenever it is reasonably foreseeable that an employee will resign as a result of her employer's unlawful employment practice, *Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101,* 3 F.3d 281, 284–85 (8th Cir.1993) (modifying *Johnson v. Bunny Bread Co.,* 646 F.2d 1250 (8th Cir.1981)), and it is plainly foreseeable that an employee might choose to resign rather than to acquiesce in or enforce her employer's discrimi-

---

**15.** A person who resigns under circumstances amounting to a constructive discharge enjoys the same Title VII rights as a person whose employment is terminated by her employer. *Ugalde v.*

*W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 242–43 (5th Cir.1993); *cf. Barrett v. Omaha Nat'l Bank,* 726 F.2d 424, 428 (8th Cir.1984). Thus, the fact

natory and illegal employment practice.[16] See *Moyo v. Gomez,* 32 F.3d 1382, 1385 (9th Cir.1994); *Equal Employment Opportunity Comm'n v. St. Anne's Hosp. of Chicago, Inc., supra,* 664 F.2d at 132–33 (7th Cir.1981); *cf. Womack v. Munson,* 619 F.2d 1292, 1297 (8th Cir.1980) (employee discharged for resistance to employer's discriminatory practices), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 571–72 (8th Cir.1982) (same), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); *Fernandez v. Kogan,* 738 F.Supp. 795, 796–97 (S.D.N.Y. 1990) (same).

The Court is therefore satisfied that defendants' efforts to hinder Chandler from hiring and promoting African–Americans, and their insistence that she discriminate against such persons, if proven, would result in an actionable Title VII claim.[17] Indeed, "[u]nder the terms of [§ 2000e–3(a)], requiring an employee to discriminate is itself an unlawful employment practice." *Moyo v. Gomez, supra,* 32 F.3d at 1385. Accordingly, it is therefore ORDERED that defendants' Motion to Dismiss pursuant to Rule 12(b)(6) be, and it is hereby, DENIED.

### III.

The final issue to be resolved involves plaintiffs' efforts to amend their complaint so as to properly present their Title VII claims to the Court. Since defendants have previously responded to plaintiffs' complaint by filing their motion to dismiss, plaintiffs "may amend [their complaint] only by leave of the [C]ourt or by written consent of [defendants]; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The appropriate disposition of a motion to amend is committed to the Court's

sound discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Humphreys v. Roche Biomedical Labs., Inc.,* 990 F.2d 1078, 1081 (8th Cir.1993).

Defendants' objection to this motion mirrors their challenge to the Court's jurisdiction, as they argue that plaintiffs should not be allowed to so amend their complaint until the EEOC has issued a final determination on the merits of plaintiffs' discrimination charges. This objection is totally specious, however, as the Court has concluded in Part I of this opinion that plaintiffs are now clearly entitled to present their Title VII claims. Moreover, since plaintiffs' Title VII claims are alleged to stem from the same nexus of operative facts as the other claims for relief put forward in their original complaint, defendants will suffer no prejudice if plaintiffs are permitted to amend their complaint as requested. Indeed, defendants themselves have admitted that "[p]laintiffs' 1981 claims and Title VII claims should be tried together." Accordingly, it is therefore ORDERED that plaintiffs' Motion for Leave to Amend Complaint be, and it is hereby, GRANTED.

IT IS SO ORDERED.

---

that Chandler resigned from defendants' employ may not affect her Title VII claim(s).

**16.** Given this conclusion, it is clear that an employee who elects to so resign will have satisfied the causation requirement of a § 2000e–3(a) claim. *See generally Sweeney v. City of Ladue, supra,* 25 F.3d at 703–04 (recognizing that causation is a function of the temporal proximity of the "opposition" and the "adverse employment action").

**17.** The Court notes that this constructive discharge theory also appears to state a claim under § 1981. *See* 42 U.S.C.A. § 1981(b) (West 1994); *see also Rivers v. Roadway Express, Inc.,* —— U.S. ——, ——, 114 S.Ct. 1510, 1514, 128 L.Ed.2d 274 (1994) ("[T]he Civil Rights Act of 1991 ... provides that § 1981's prohibition of racial discrimination in the making and enforcement of contracts ... includ[es] discriminatory contract terminations.").